**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

——————————————————————— x

Christopher Silva, individually on         :
behalf of himself and all others similarly   :
situated,                           :   Case No.
                                 :
         Plaintiffs,             :
v.                              :
                                 :     **CLASS ACTION**
Hornell Brewing Co., Inc., Arizona Beverages USA  :     **COMPLAINT**
LLC, Beverage Marketing USA, Inc. and Arizona  :
Beverage Co.,                  :    **JURY TRIAL DEMANDED**
                                 :
         Defendants.          :

——————————————————————— x

Plaintiff, Christopher Silva (hereinafter "Plaintiff"), individually and on behalf of

all others similarly situated, by his attorneys, alleges the following upon information and belief,

except for those allegations pertaining to Plaintiff, which are based on personal knowledge:

**NATURE OF THE ACTION**

1.    This action seeks to remedy the deceptive and misleading business practices of

Hornell Brewing Co., Inc., Arizona Beverages USA LLC, Beverage Marketing USA, Inc. and

Arizona Beverage Co. (hereinafter "Defendants") with respect to the marketing and sales of the

Arizona All Natural Fruit Snacks product (hereinafter the "Product") throughout the State of

New York and throughout the country.

1

2.      Defendants manufacture, sell, and distribute the Product using a marketing and advertising campaign centered around claims that appeal to health conscious consumers, i.e., that their Product is "All Natural".  However, Defendants' advertising and marketing campaign is false, deceptive, and misleading because the Product contains synthetic ingredients.

3.      Plaintiff and those similarly situated ("Class Members") relied on Defendants' misrepresentations that the Product is "All Natural" when purchasing the Product.  Plaintiff and Class Members paid a premium for the Product over and above comparable products that did not purport to be "All Natural".  Given that Plaintiff and Class Members paid a premium for the Product based on Defendants' misrepresentations that they are "All Natural", Plaintiff and Class Members suffered an injury in the amount of the premium paid.

4.      Defendants' conduct violated and continues to violate, *inter alia*, New York General Business Law §§ 349 and 350, the consumer protection statutes of all 50 states, and the Magnuson-Moss Warranty Act.  Defendants breached and continue to breach their express and implied warranties regarding the Product.  Defendants have been and continue to be unjustly enriched.  Accordingly, Plaintiff brings this action against Defendants on behalf of himself and Class Members who purchased the Product during the applicable statute of limitations period (the "Class Period").

**FACTUAL BACKGROUND**

5.      Consumers have become increasingly concerned about the effects of synthetic and chemical ingredients in food, cleaning products, bath and beauty products, and everyday

2

household products.  Companies such as the Defendant have capitalized on consumers' desires for purportedly "natural products."  Indeed, consumers are willing to pay, and have paid, a premium for products branded "natural" over products that contain synthetic ingredients.  In 2015, sales of natural products grew 9.5% to $180 billion.[1]  Reasonable consumers, including Plaintiff and Class Members, value natural products for important reasons, including the belief that they are safer and healthier than alternative products that are not represented as natural.

6.     Despite the Product containing synthetic ingredients, Defendants market the Product as being "All Natural". The Product's labeling is depicted below:

---

[1] *Natural Products Industry Sales up 9.5% to $180bn Says NBJ*, FOOD NAVIGATOR, http://www.foodnavigator-usa.com/Markets/EXPO-WEST-trendspotting-organics-natural-claims/(page)/6; *see also*  Shoshanna Delventhal, *Study Shows Surge in Demand for "Natural" Products*, INVESTOPEDIA (February 22, 2017), http://www.investopedia.com/articles/investing/022217/study-shows-surge-demand-natural-products.asp (Study by Kline Research indicated that in 2016, the personal care market reached 9% growth in the U.S. and 8% in the U.K. The trend-driven natural and organic personal care industry is on track to be worth $25.1 million by 2025); *Natural living: The next frontier for growth? [NEXT Forecast 2017]*, NEW HOPE NTWORK (December 20, 2016), http://www.newhope.com/beauty-and-lifestyle/natural-living-next-frontier-growth-next-forecast-2017.

**Arizona All Natural Fruit Snacks**



**Synthetic Ingredients:**

Gelatin
Citric Acid
Ascorbic Acid
Dextrose
Glucose Syrup
Modified Food Starch (Corn)

4

7.    Defendants' representations that the Product is "All Natural", is false, misleading, and deceptive because the Product contains ingredients that are, as explained below, synthetic.

a.    **Citric Acid** is (2-hydroxy-propane-1, 2,3-tricarboxylic acid) is a synthetic substance. While the chemical's name has the word "citric" in it, citric acid is no longer extracted from the citrus fruit but industrially manufactured by fermenting certain genetically mutant strains of the black mold fungus, *Aspergillus niger*.

b.    **Gelatin** is a synthetic ingredient that is commercially processed using hydrolysis. See 9 C.F.R. §94.20.

c.    **Ascorbic Acid** is a chemical preservative and is synthetic. *See* 21 C.F.R. § 182.3013.

d.    **Dextrose** is a chemically derived sweetener and is a principal component of high fructose corn syrup. It is produced through chemical degradation of corn starch by complete hydrolysis with certain acids or enzymes, followed by commercial refinement and crystallization of the resulting hydrolysate. Dextrose is thus a synthetic substance. On information and belief, GM corn is used as the source of the dextrose. 21 C.F.R. § 146.3

e.    **Glucose Syrup** is also known as Corn Syrup and it is obtained by partial hydrolysis of corn starch with safe and suitable acids or enzymes. It may also occur in a dehydrated form (dried glucose syrup). Depending on the degree of

5

hydrolysis, corn syrup may contain, in addition to glucose, maltose and higher saccharides. *See* 21 C.F.R. § 184.1865.

    **f.** **Modified Food Starch and Modified Corn Starch** are derivatives of a starch that is chemically treated (often with hydrochloric acid) to change its properties for use as a thickening agent, stabilizer, or emulsifier. *See* 21 C.F.R § 178.3520.

8.    Whether Defendants' labeling of the Product as "All Natural" is deceptive is judged by whether it would deceive or mislead a reasonable person. To assist in ascertaining what a reasonable consumer believes the term natural means, one can look to the regulatory agencies for their guidance.

9.    In 2013, the United States Department of Agriculture ("USDA") issued a Draft Guidance Decision Tree for Classification of Materials as Synthetic or Nonsynthetic (Natural). In accordance with this decision tree, a substance is natural—as opposed to synthetic—if: (a) it is manufactured, produced, or extracted from a natural source (i.e. naturally occurring mineral or biological matter); (b) it has not undergone a chemical change (i.e. a process whereby a substance is transformed into one or more other distinct substances) so that it is chemically or structurally different than how it naturally occurs in the source material; or (c) the chemical change was created by a naturally occurring biological process such as composting, fermentation, or enzymatic digestion or by heating or burning biological matter.

10.    Congress has defined "synthetic" to mean "a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance

extracted from naturally occurring plants, animals, or mineral sources . . ." . 7 U.S.C. § 6502 (21).

11.    Surveys and other market research, including expert testimony Plaintiff intends to introduce, will demonstrate that the term "natural" is misleading to a reasonable consumer because the reasonable consumer believes that the term "natural," when used to describe goods such as the Product, means that the goods are free of synthetic ingredients.

12.    Consumers lack the meaningful ability to test or independently ascertain or verify whether a product is natural, especially at the point of sale.  Consumers would not know the true nature of the ingredients merely by reading the ingredients label.

13.    Discovering that the ingredients are not natural and are actually synthetic requires a scientific investigation and knowledge of chemistry beyond that of the average consumer.  That is why, even though the ingredients listed above are identified on the back of the Product's packaging in the ingredients listed, the reasonable consumer would not understand – nor are they expected to understand - that these ingredients are synthetic.

14.    Moreover, the reasonable consumer is not expected or required to scour the ingredients list on the back of the Product in order to confirm or debunk Defendants' prominent front-of-the-Product claims, representations, and warranties that the Product is "All Natural".

15.    Defendants did not disclose that the above listed ingredients are synthetic ingredients.  A reasonable consumer understands Defendants' "All Natural" claims to mean that the Product is "All Natural" and do not contain synthetic ingredients.

7

16.     Defendants have thus violated, *inter alia*,  NY General Business Law § 392-b by: a) putting upon an article of merchandise, bottle, wrapper, package, label or other thing, containing or covering such an article, or with which such an article is intended to be sold, or is sold, a false description or other indication of or respecting the kind of such article or any part thereof; and b) selling or offering for sale an article, which to their knowledge is falsely described or indicated upon any such package, or vessel containing the same, or label thereupon, in any of the particulars specified.

17.     Consumers rely on label representations and information in making purchasing decisions.

18.     The marketing of the Product as "All Natural" in a prominent location on the labels of all of the Product, throughout the Class Period, evidences Defendants' awareness that "All Natural" claims are material to consumers.

19.     Defendants' deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

20.     Plaintiff and the Class members reasonably relied to their detriment on Defendants' misleading representations and omissions.

21.     Defendants' false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and the Class members.

22.     In making the false, misleading, and deceptive representations and omissions described herein, Defendants knew and intended that consumers would pay a premium for a Product labeled "All Natural" over comparable products not so labeled.

23.     As an immediate, direct, and proximate result of Defendants' false, misleading, and deceptive representations and omissions, Defendants injured Plaintiff and the Class members in that they:

a. Paid a sum of money for a Product that was not what Defendants represented;

b. Paid a premium price for a Product that was not what Defendants represented;

c. Were deprived of the benefit of the bargain because the Product they purchased was different from what Defendants warranted; and

d. Were deprived of the benefit of the bargain because the Product they purchased had less value than what Defendants represented.

e. Ingested a substance that was of a different quality than what Defendant promised; and

f. Were denied the benefit of the beneficial properties of the natural foods Defendant promised.

24.     Had Defendants not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class members would not have been willing to pay the same amount for the Product they purchased, and, consequently, Plaintiff and the Class members would not have been willing to purchase the Product.

9

25.     Plaintiff and the Class members paid for a Product that was "All Natural" but received a Product that was not "All Natural". The Product Plaintiff and the Class members received was worth less than the Product for which they paid.

26.     Based on Defendants' misleading and deceptive representations, Defendants were able to, and did, charge a premium price for the Product over the cost of competitive products not bearing an "All Natural" label.

27.     Plaintiff and the Class members all paid money for the Product. However, Plaintiff and the Class members did not obtain the full value of the advertised Product due to Defendants' misrepresentations and omissions. Plaintiff and the Class members purchased, purchased more of, and/or paid more for, the Product than they would have had they known the truth about the Product. Consequently, Plaintiff and the Class members have suffered injury in fact and lost money as a result of Defendants' wrongful conduct.

## JURISDICTION AND VENUE

28.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section 1332(d) in that: (1) this is a class action involving more than 100 class members; (2) Plaintiff is a citizen of the State of New York, Defendant Hornell Brewing Co., Inc. is a citizen of the State of New York; Defendant Arizona Beverages USA LLC is a citizen of the State of New York; Defendant Beverage Marketing USA, Inc. is a citizen of the State of New York; Defendant Arizona Beverage Co. is a citizen of the State of Ohio; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

29.     This Court has personal jurisdiction over Defendants because Defendants conduct and transact business in the State of New York, contract to supply goods within the State of New York, and supply goods within the State of New York.

30.     Venue is proper because Plaintiff and many Class Members reside in the Eastern District of New York, and throughout the State of New York. A substantial part of the events or omissions giving rise to the classes' claims occurred in this District.

## PARTIES

### Plaintiff

31.     Plaintiff is an individual consumer who, at all times material hereto, was a resident of Brooklyn in the State of New York.  During the Class Period, Plaintiff purchased the Product. The packaging of the Product Plaintiff purchased contained the representation that it was "All Natural".  Plaintiff believes that products which are labeled "All Natural" do not contain synthetic ingredients. Plaintiff believes a synthetic ingredient is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources. If the Product was actually "All Natural", as represented on the Product's label, Plaintiff would purchase the Product in the immediate future.

32.     Had Defendants not made the false, misleading, and deceptive representation that the Product was "All Natural", Plaintiff would not have been willing to pay the same amount for the Product, and, consequently, he would not have been willing to purchase the Product.

11

Plaintiff purchased, purchased more of, and/or paid more for, the Product than he would have had he known the truth about the Product. Since the Product Plaintiff received was worth less than the Product for which he paid, Plaintiff was injured in fact and lost money as a result of Defendants' improper conduct.

**Defendants**

33.     Defendant Hornell Brewing Co., Inc. is a corporation with its principal place of business in Woodbury, New York.  Defendant manufactures, markets, advertises and distributes the Product throughout the United States.  Defendant created and/or authorized the false, misleading and deceptive advertisements, packaging and labeling for the Product.

34.     Defendant Arizona Beverages USA LLC is a corporation with its principal place of business in Woodbury, New York.  Defendant manufactures, markets, advertises and distributes the Product throughout the United States.  Defendant created and/or authorized the false, misleading and deceptive advertisements, packaging and labeling for the Product.

35.     Defendant Beverage Marketing USA, Inc. is a corporation with its principal place of business in Woodbury, New York.  Defendant manufactures, markets, advertises and distributes the Product throughout the United States.  Defendant created and/or authorized the false, misleading and deceptive advertisements, packaging and labeling for the Product.

36.     Defendant Arizona Beverage Co. is a corporation with its principal place of business in Cincinnati, Ohio.  Defendant manufactures, markets, advertises and distributes the Product throughout the United States.  Defendant created and/or authorized the false, misleading

and deceptive advertisements, packaging and labeling for the Product.

## CLASS ALLEGATIONS

37.     Plaintiff brings this matter on behalf of himself and those similarly situated.  As detailed at length in this Complaint, Defendants orchestrated deceptive marketing and labeling practices.  Defendants' customers were uniformly impacted by and exposed to this misconduct. Accordingly, this Complaint is uniquely situated for class-wide resolution, including injunctive relief.

38.     The Class is defined as all consumers who purchased the Product anywhere in the United States during the Class Period (the "Class").

39.     Plaintiff also seeks certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Product in the State of New York at any time during the Class Period (the "New York Subclass").

40.     The Class and New York Subclass shall be referred to collectively throughout the Complaint as the Class.

41.     The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

42.     <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable.  Plaintiff believes that there are thousands of consumers who are Class Members described above who have been damaged by Defendants' deceptive and misleading practices.

43.     <u>Commonality</u>: The questions of law and fact common to the Class Members

which predominate over any questions which may affect individual Class Members include, but

are not limited to:

a.     Whether Defendants are responsible for the conduct alleged herein which was

uniformly directed at all consumers who purchased the Product;

b.     Whether Defendants' misconduct set forth in this Complaint demonstrates that

Defendants have engaged in unfair, fraudulent, or unlawful business practices

with respect to the advertising, marketing, and sale of its Product;

c.     Whether Defendants made false and/or misleading statements to the Class and

the public concerning the contents of their Product;

d.     Whether Defendants' false and misleading statements concerning their

Product was likely to deceive the public;

e.     Whether Plaintiff and the Class are entitled to injunctive relief;

f.     Whether Plaintiff and the Class are entitled to money damages under the same

causes of action as the other Class Members.

44.     <u>Typicality</u>: Plaintiff is a member of the Class.  Plaintiff's claims are typical of the

claims of each Class Member in that every member of the Class was susceptible to the same

deceptive, misleading conduct and purchased the Defendants' Product.  Plaintiff is entitled to

relief under the same causes of action as the other Class Members.

14

45.    <u>Adequacy</u>: Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the Class Members he seeks to represent; his consumer fraud claims are common to all members of the Class and he has a strong interest in vindicating his rights; he has retained counsel competent and experienced in complex class action litigation and they intend to vigorously prosecute this action.

46.    <u>Predominance</u>: Pursuant to Rule 23(b)(3), the common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class.  The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendants' deceptive and misleading marketing and labeling practices.

47.    <u>Superiority</u>: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a.  The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b.  The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

c.  When Defendants' liability has been adjudicated, all Class Members' claims can

be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d. This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f. This class action will assure uniformity of decisions among Class Members;

g. The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h. Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action; and

i. It would be desirable to concentrate in this single venue the litigation of all plaintiffs who were induced by Defendants' uniform false advertising to purchase their Product as being "All Natural".

48.     Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

16

## INJUNCTIVE CLASS RELIEF

49.    Rules 23(b)(1) and (2) contemplate a class action for purposes of seeking class-wide injunctive relief.  Here, Defendants have engaged in conduct resulting in misleading consumers about ingredients in its Product.  Since Defendants' conduct has been uniformly directed at all consumers in the United States, and the conduct continues presently, injunctive relief on a class-wide basis is a viable and suitable solution to remedy Defendants' continuing misconduct. Plaintiff would purchase the Product again if the ingredients were changed so that they indeed were "All Natural".

50.    The injunctive Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

a.    <u>Numerosity</u>: Individual joinder of the injunctive Class Members would be wholly impracticable.  Defendants' Product has been purchased by thousands of people throughout the United States;

b.    <u>Commonality</u>: Questions of law and fact are common to members of the Class. Defendants' misconduct was uniformly directed at all consumers.  Thus, all members of the Class have a common cause against Defendants to stop their misleading conduct through an injunction.  Since the issues presented by this injunctive Class deal exclusively with Defendants' misconduct, resolution of these questions would necessarily be common to the entire Class.  Moreover,

17

there are common questions of law and fact inherent in the resolution of the

proposed injunctive class, including, *inter alia*:

    i.   Resolution of the issues presented in the 23(b)(3) class;

    ii.  Whether members of the Class will continue to suffer harm by virtue of

          Defendants' deceptive product marketing and labeling; and

    iii.  Whether, on equitable grounds, Defendants should be prevented from

          continuing to deceptively mislabel their Product as being "All Natural".

c.  <u>Typicality</u>: Plaintiff's claims are typical of the claims of the injunctive Class

because his claims arise from the same course of conduct (i.e. Defendants'

deceptive and misleading marketing, labeling, and advertising practices).  Plaintiff

is a typical representative of the Class because, like all members of the injunctive

Class, he purchased Defendants' Product which was sold unfairly and deceptively

to consumers throughout the United States.

d.  <u>Adequacy</u>: Plaintiff will fairly and adequately represent and protect the interests

of the injunctive Class.  His consumer protection claims are common to all

members of the injunctive Class and he has a strong interest in vindicating his

rights.  In addition, Plaintiff and the Class are represented by counsel who is

competent and experienced in both consumer protection and class action

litigation.

51.     The injunctive Class is properly brought and should be maintained as a class action under Rule 23(b)(2) because Plaintiff seeks injunctive relief on behalf of the Class Members on grounds generally applicable to the entire injunctive Class.  Certification under Rule 23(b)(2) is appropriate because Defendants have acted or refused to act in a manner that applies generally to the injunctive Class (i.e. Defendants have marketed their Product using the same misleading and deceptive labeling to all of the Class Members).  Any final injunctive relief or declaratory relief would benefit the entire injunctive Class as Defendants would be prevented from continuing their misleading and deceptive marketing practices and would be required to honestly disclose to consumers the nature of the contents of their Product. Plaintiff would purchase the Product again if the ingredients were changed so that they indeed were "All Natural".

**FIRST CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 349**
**(On Behalf of Plaintiff and New York Subclass Members)**

52.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

53.     New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

54.     The conduct of Defendants alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York

19

Subclass Members seek monetary damages and the entry of preliminary and permanent injunctive relief against Defendant, enjoining them from inaccurately describing, labeling, marketing, and promoting the Product.

55.    There is no adequate remedy at law.

56.    Defendant misleadingly, inaccurately, and deceptively advertises and markets its Product to consumers.

57.    Defendants' improper consumer-oriented conduct—including labeling and advertising the Product as being "All Natural" —is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Subclass Members to purchase and pay a premium for Defendants' Product and to use the Product when they otherwise would not have. Defendants made their untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

58.    Plaintiff and the New York Subclass Members have been injured inasmuch as they paid a premium for products that were—contrary to Defendants' representations— not "All Natural".  Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

59.    Defendants' advertising and Product's packaging and labeling induced the Plaintiff and the New York Subclass Members to buy Defendants' Product and to pay a premium price for it.

60.     Defendants' deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Subclass Members have been damaged thereby.

61.     As a result of Defendants' recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Subclass Members are entitled to monetary, compensatory, treble and punitive damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 350**
**(On Behalf of Plaintiff and the New York Subclass Members)**

62.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

63.     N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.

64.     N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to

> which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

65.     Defendants' labeling and advertisements contain untrue and materially misleading statements concerning Defendants' Product inasmuch as they misrepresent that the Product is "All Natural".

66.     Plaintiff and the New York Subclass Members have been injured inasmuch as they relied upon the labeling, packaging and advertising and paid a premium for the Product which was—contrary to Defendants' representations—not "All Natural".  Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

67.     Defendants' advertising, packaging and products' labeling induced the Plaintiff and the New York Subclass Members to buy Defendants' Product.

68.     Defendants made their untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

69.     Defendants' conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

70.     Defendants made the material misrepresentations described in this Complaint in Defendants' advertising, and on the Product's packaging and labeling.

71.     Defendants' material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large.  Moreover, all consumers purchasing the Product were and continue to be exposed to Defendants' material misrepresentations.

72.     As a result of Defendants' recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Subclass Members are entitled to monetary, compensatory, treble and punitive damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

### THIRD CAUSE OF ACTION
### VIOLATION OF STATE CONSUMER PROTECTION STATUTES
**(On Behalf of Plaintiff and All Class Members)**

73.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

74.     Plaintiff and Class Members have been injured as a result of Defendants' violations of the following state consumer protection statutes, which also provide a basis for redress to Plaintiff and Class Members based on Defendants' fraudulent, deceptive, unfair and unconscionable acts, practices and conduct.

75.     Defendants' conduct as alleged herein violates the consumer protection, unfair trade practices and deceptive acts laws of each of the following jurisdictions:

a.  **Alaska:** Defendants' practices were and are in violation of Alaska's Unfair Trade Practices and Consumer Protection Act, Alaska Stat. § 45.50.471, *et seq.*

b.  **Arizona:**  Defendants' practices were and are in violation of Arizona's Consumer Fraud Act, Ariz. Rev. Stat. Ann. §§ 44-1521, *et seq*.

c.  **Arkansas:**  Defendants' practices were and are in violation of Arkansas Code Ann. § 4-88-101, *et seq.*

23

d.   **California:**  Defendants' practices were and are in violation of California Consumer Legal Remedies Act, Civil Code § 1750, *et seq.*, and California's Unfair Competition Law, California Business and Professions Code § 17200, *et seq.*, and California's False Advertising Law, California Business and Professions Code § 17500, *et seq.*

e.   **Colorado**:  Defendants' practices were and are in violation of Colorado's Consumer Protection Act, Colo. Rev. Stat. §§ 61-1-101, *et seq.*

f.   **Connecticut:**  Defendants' practices were and are in violation of Connecticut's Gen. Stat. § 42-110a, *et seq.*

g.   **Delaware:**  Defendants' practices were and are in violation of Delaware's Consumer Fraud Act, Del. Code Ann. tit. 6, § 2511, *et seq.* and the Deceptive Trade Practices Act, Del. Code Ann. tit. 6, § 2531, *et seq.*

h.   **District of Columbia:**  Defendants' practices were and are in violation of the District of Columbia's Consumer Protection Act, D.C. Code § 28-3901, *et seq.*

i.   **Florida:**  Defendants' practices were and are in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*

j.   **Hawaii:**  Defendants' practices were and are in violation of the Hawaii's Uniform Deceptive Trade Practices Act, Haw. Rev. Stat. § 481A-1, *et seq.* and Haw. Rev. Stat. § 480-2.

k.   **Idaho:**  Defendants' practices were and are in violation of Idaho's Consumer

24

Protection Act, Idaho Code Ann. § 48-601, *et seq*.

l.  **Illinois:** Defendants' acts and practices were and are in violation of Illinois' Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/2; and Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/2.

m.  **Indiana:** Defendants' practices were and are in violation of Indiana's Deceptive Consumer Sales Act, Ind. Code Ann. § 24-5-0.5-1, *et seq*.

n.  **Kansas:** Defendants' practices were and are in violation of Kansas's Consumer Protection Act, Kat. Stat. Ann. § 50-623, *et seq*.

o.  **Kentucky:** Defendants' practices were and are in violation of Kentucky's Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.110, *et seq*.

p.  **Maine:** Defendants' practices were and are in violation of the Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. Ann. Tit. 5, § 205-A, *et seq*. and 10 Me. Rev. Stat. Ann. § 1101, *et seq*.

q.  **Maryland:** Defendants' practices were and are in violation of Maryland's Consumer Protection Act, Md. Code Ann. Com. Law § 13-101, *et seq*.

r.  **Massachusetts:** Defendants' practices were unfair and deceptive acts and practices in violation of Massachusetts' Consumer Protection Act, Mass. Gen. Laws ch. 93A, § 2.

s.  **Michigan:** Defendants' practices were and are in violation of Michigan's Consumer Protection Act, Mich. Comp. Laws Ann. § 445.901, *et seq*.

25

t.   **Minnesota:**  Defendants' practices were and are in violation of Minnesota's Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq.* and the Unlawful Trade Practices law, Minn. Stat. § 325D.09, *et seq.*

u.   **Missouri:**  Defendants' practices were and are in violation of Missouri's Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*

v.   **Nebraska:**  Defendants' practices were and are in violation of Nebraska's Consumer Protection Act, Neb. Rev. Stat. § 59-1601, *et seq.* and the Uniform Deceptive Trade

     Practices Act, § 87-302, *et seq.*

w.   **Nevada:**  Defendants' practices were and are in violation of Nevada's Deceptive Trade Practices Act, Nev. Rev. Stat. Ann. §§ 598.0903 and 41.600.

x.   **New Hampshire:**  Defendants' practices were and are in violation of New Hampshire's Regulation of Business Practices for Consumer Protection, N.H. Rev. Stat. Ann. § 358-A:1, *et seq.*

y.   **New Jersey:**  Defendants' practices were and are in violation of New Jersey's Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, *et seq.*

z.   **New Mexico:**  Defendants' practices were and are in violation of New Mexico's Unfair Practices Act, N.M. Stat. Ann. § 57-12-1, *et seq.*

aa.  **North Carolina:**  Defendants' practices were and are in violation of North Carolina's Unfair Deceptive Trade Practices Act, N.C. Gen. Stat. Ann. § 75-1, *et*

*seq.*

bb. **North Dakota:** Defendants' practices were and are in violation of North

Dakota's Unlawful Sales or Advertising Practices law, N.D. Cent. Code § 51-15-

01, *et seq.*

cc. **Ohio:** Defendants' practices were and are in violation of Ohio's Consumer Sales

Practices Act, Ohio Rev. Code Ann. § 1345.01, *et seq.* and Ohio's Deceptive

Trade Practices Act. Ohio Rev. Code Ann. § 4165.01, *et seq.*

dd. **Oklahoma:** Defendants' practices were and are in violation of Oklahoma's

Consumer Protection Act, Okla. Stat. Ann. tit. 15 § 751, *et seq.*, and Oklahoma's

Deceptive Trade Practices Act, Okla. Stat. Ann. tit. 78 § 51, *et seq.*

ee. **Oregon:** Defendants' practices were and are in violation of Oregon's Unlawful

Trade Practices law, Or. Rev. Stat. § 646.605, *et seq.*

ff. **Pennsylvania:** Defendants' practices were and are in violation of Pennsylvania's

Unfair Trade Practice and Consumer Protection Law, 73 Pa. Stat. Ann. § 201-1, *et*

*seq.*

gg. **Rhode Island:** Defendants' practices were and are in violation of Rhode Island's

Deceptive Trade Practices Act, R.I. Gen. Laws § 6-13.1-1, *et seq.*

hh. **South Dakota:** Defendants' practices were and are in violation of South

Dakota's Deceptive Trade Practices and Consumer Protection Act, S.D. Codified

Laws § 37-24-1, *et seq.*

ii. **Texas:** Defendants' practices were and are in violation of Texas' Deceptive Trade Practices Consumer Protection Act, Tex. Bus. & Com. Code Ann. § 17.41, *et seq.*

jj. **Utah:** Defendants' practices were and are in violation of Utah's Consumer Sales Practices Act, Utah Code Ann. § 13-11-1, *et seq.*, and Utah's Truth in Advertising Law, Utah Code Ann. § 13-11a-1, *et seq.*

kk. **Vermont:** Defendants' practices were and are in violation of Vermont's Consumer Fraud Act, Vt. Stat. Ann. tit. 9 § 2451, *et seq.*

ll. **Washington:** Defendants' practices were and are in violation of Washington Consumer Protection Act, Wash. Rev. Code Ann. § 19.86, *et seq.*

mm. **West Virginia:** Defendants' practices were and are in violation of West Virginia's Consumer Credit and Protection Act, W. Va. Code § 46A-6-101, *et seq.*

*nn.* **Wisconsin:** Defendants' practices were and are in violation of Wisconsin's Consumer Act, Wis. Stat. §421.101, *et seq.*

oo. **Wyoming:** Defendants' practices were and are in violation of Wyoming's Consumer Protection Act, Wyo. Stat. Ann. §40-12-101, *et seq.*

76.    Defendants violated the aforementioned states' unfair and deceptive acts and practices laws by representing that the Product is "All Natural".

77.    Contrary to Defendants' representations, the Product is not "All Natural".

28

78.     Defendants' misrepresentations were material to Plaintiff's and Class Members' decision to pay a premium for the Product.

79.     Defendants made their untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

80.     As a result of Defendants' violations of the aforementioned states' unfair and deceptive practices laws, Plaintiff and Class Members paid a premium for the Product.

81.     As a result of Defendants' violations, Defendants have been unjustly enriched.

82.     Pursuant to the aforementioned states' unfair and deceptive practices laws, Plaintiff and Class Members are entitled to recover compensatory damages, restitution, punitive and special damages including but not limited to treble damages, reasonable attorneys' fees and costs and other injunctive or declaratory relief as deemed appropriate or permitted pursuant to the relevant law.

## FOURTH CAUSE OF ACTION
## BREACH OF EXPRESS WARRANTY
### (On Behalf of Plaintiff and All Class Members)

83.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

84.     Defendants provided the Plaintiff and Class Members with an express warranty in the form of written affirmations of fact promising and representing that the Product is "All Natural".

29

85.    The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

86.    These affirmations of fact became part of the basis for the bargain and were material to the Plaintiff's and Class Members' transactions.

87.    Plaintiff and Class Members reasonably relied upon the Defendants' affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendants' Product.

88.    Within a reasonable time after they knew or should have known of Defendants' breach, Plaintiff, on behalf of himself and Class Members, placed Defendants on notice of their breach, giving Defendants an opportunity to cure their breach, which they refused to do.

89.    Defendants breached the express warranty because the Product is not "All Natural" because it contains synthetic ingredients.

90.    Defendants thereby breached the following state warranty laws:

    a.      Code of Ala. § 7-2-313;

    b.      Alaska Stat. § 45.02.313;

    c.      A.R.S. § 47-2313;

    d.      A.C.A. § 4-2-313;

    e.      Cal. Comm. Code § 2313;

    f.      Colo. Rev. Stat. § 4-2-313;

    g.      Conn. Gen. Stat. § 42a-2-313;

h.      6 Del. C. § 2-313;

i.      D.C. Code § 28:2-313;

j.      Fla. Stat. § 672.313;

k.      O.C.G.A. § 11-2-313;

l.      H.R.S. § 490:2-313;

m.      Idaho Code § 28-2-313;

n.      810 I.L.C.S. 5/2-313;

o.      Ind. Code § 26-1-2-313;

p.      Iowa Code § 554.2313;

q.      K.S.A. § 84-2-313;

r.      K.R.S. § 355.2-313;

s.      11 M.R.S. § 2-313;

t.      Md. Commercial Law Code Ann. § 2-313;

u.      106 Mass. Gen. Laws Ann. § 2-313;

v.      M.C.L.S. § 440.2313;

w.      Minn. Stat. § 336.2-313;

x.      Miss. Code Ann. § 75-2-313;

y.      R.S. Mo. § 400.2-313;

z.      Mont. Code Anno. § 30-2-313;

aa.     Neb. Rev. Stat. § 2-313;

31

bb.     Nev. Rev. Stat. Ann. § 104.2313;

cc.     R.S.A. 382-A:2-313;

dd.     N.J. Stat. Ann. § 12A:2-313;

ee.     N.M. Stat. Ann. § 55-2-313;

ff.     N.Y. U.C.C. Law § 2-313;

gg.     N.C. Gen. Stat. § 25-2-313;

hh.     N.D. Cent. Code § 41-02-30;

ii.     II. O.R.C. Ann. § 1302.26;

jj.     12A Okl. St. § 2-313;

kk.     Or. Rev. Stat. § 72-3130;

ll.     13 Pa. Rev. Stat. § 72-3130;

mm.     R.I. Gen. Laws § 6A-2-313;

nn.     S.C. Code Ann. § 36-2-313;

oo.     S.D. Codified Laws, § 57A-2-313;

pp.     Tenn. Code Ann. § 47-2-313;

qq.     Tex. Bus. & Com. Code § 2.313;

rr.     Utah Code Ann. § 70A-2-313;

ss.     9A V.S.A. § 2-313;

tt.     Va. Code Ann. § 59.1-504.2;

uu.     Wash. Rev. Code Ann. § 6A.2-313;

32

vv.   W. Va. Code § 46-2-313;

ww.   Wis. Stat. § 402.313;

xx.   Wyo. Stat. § 34.1-2-313.

91.   As a direct and proximate result of Defendants' breach of express warranty,

Plaintiff and Class Members were damaged in the amount of the price they paid for the Product,

in an amount to be proven at trial.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF THE MAGNUSON-MOSS**
**WARRANTY ACT, 15 U.S.C. § 2301 *et seq*.**
**(On Behalf of Plaintiff and All Class Members)**

92.   Plaintiff repeats and realleges each and every allegation contained in the

foregoing paragraphs as if fully set forth herein.

93.   Plaintiff brings this claim individually and on behalf of all members of the Class.

Upon certification, the Class will consist of more than 100 named Plaintiffs.

94.   The Magnuson-Moss Warranty Act provides a federal remedy for consumers who

have been damaged by the failure of a supplier or warrantor to comply with any obligation under

a written warranty or implied warranty, or other various obligations established under the

Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*.

95.   The Product is a "consumer products" within the meaning of the Magnuson-Moss

Warranty Act, 15 U.S.C. § 2301(1).

33

96.    Plaintiff and other members of the Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

97.    Defendant is "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301(4) & 2301(5).

98.    Defendant represented in writing that the Product is "All Natural".

99.    These statements were made in connection with the sale of the Product and relate to the nature of the Product and affirm and promise that the Product is as represented and defect free and, as such, are "written warranties" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6)(A).

100.    As alleged herein, Defendants breached the written warranty by selling consumers Product that is not "All Natural".

101.    The Product does not conform to the Defendants' written warranty and therefore violate the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*.  Consequently, Plaintiff and the other members of the Class have suffered injury and are entitled to damages in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY OF MERCHANTIBILITY
### (On Behalf of Plaintiff and All Class Members)

102.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

103.    Defendants are in the business of manufacturing, distributing, marketing and

34

advertising the above listed products.

104.    Under the Uniform Commercial Code's implied warranty of merchantability, the Defendants warranted to Plaintiff and Class Members that the Product is "All Natural".

105.    Defendant breached the implied warranty of merchantability in that Defendants' Product's ingredients deviate from the label and products' description, and reasonable consumers expecting a product that conforms to its label would not accept the Defendants' Product if they knew that they actually contained synthetic ingredients, that are not "All Natural".

106.    Within a reasonable amount of time after the Plaintiff discovered that the Product contains synthetic ingredients, Plaintiff notified the Defendants of such breach.

107.    The inability of the Defendants' Product to meet the label description was wholly due to the Defendants' fault and without Plaintiff's or Class Members' fault or neglect, and was solely due to the Defendants' manufacture and distribution of the Product to the public.

108.    As a result of the foregoing, Plaintiff and Class Members have been damaged in the amount paid for the Defendants' Product, together with interest thereon from the date of purchase.

**<u>SEVENTH CAUSE OF ACTION</u>**
**<u>BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE</u>**
**(On Behalf of Plaintiff and All Class Members)**

109.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

110.    Defendant knew or had reason to know that the Plaintiff and other Class Members were buying their Product with the specific purpose of buying products that contained exclusively natural ingredients.

111.    Plaintiff and the other Class Members, intending to use wholly natural products, relied on the Defendants in selecting their Product to fit their specific intended use.

112.    Defendant held themselves out as having particular knowledge of the Defendants' Product's ingredients.

113.    Plaintiff's and Class Members' reliance on Defendants in selecting Defendants' Product to fit their particular purpose was reasonable given Defendants' claims and representations in its advertising, packaging and labeling concerning the Product's ingredients.

114.    Plaintiff and the other Class Members' reliance on Defendants in selecting Defendants' Product to fit their particular use was reasonable given Defendants' particular knowledge of the Product it manufactures and distributes.

115.    As a result of the foregoing, Plaintiff and Class Members have been damaged in the amount paid for the Defendants' Product, together with interest thereon from the date of purchase.

**EIGHTH CAUSE OF ACTION**
**COMMON LAW UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and All Class Members in the Alternative)**

116.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

36

117.    Plaintiff, on behalf of himself and consumers nationwide, bring a common law claim for unjust enrichment.

118.    Defendant's conduct violated, *inter alia*, state and federal law by manufacturing, advertising, marketing, and selling their Product while misrepresenting and omitting material facts.

119.    Defendant's unlawful conduct as described in this Complaint allowed Defendant to knowingly realize substantial revenues from selling their Product at the expense of, and to the detriment or impoverishment of, Plaintiff and Class Members, and to Defendant's benefit and enrichment.  Defendant has thereby violated fundamental principles of justice, equity, and good conscience.

120.    Plaintiff and Class Members conferred significant financial benefits and paid substantial compensation to Defendant for the Product, which was not as Defendant represented it to be.

121.    Under New York's common law principles of unjust enrichment, it is inequitable for Defendant to retain the benefits conferred by Plaintiff's and Class Members' overpayments.

122.    Plaintiff and Class Members seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiff and Class Members may seek restitution.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

37

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, pray for judgment as follows:

 (a) Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Rule 23 of the FRCP;

 (b) Entering preliminary and permanent injunctive relief against Defendant, directing Defendants to correct their practices and to comply with consumer protection statutes nationwide, including New York consumer protection laws;

 (c) Awarding monetary damages, including treble damages;

 (d) Awarding punitive damages;

 (e) Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys and experts, and reimbursement of Plaintiff's expenses; and

 (f) Granting such other and further relief as the Court may deem just and proper.

Dated: February 11, 2020

**THE SULTZER LAW GROUP P.C.**

/**s**/ Joseph Lipari

By: _____

Joseph Lipari, Esq.
270 Madison Avenue, Suite 1800
New York, NY 10016
Tel: (917) 444-1960
Fax: (888) 749-7747
liparij@thesultzerlawgroup.com

*Counsel for Plaintiff and the Class*
