**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | x | |
| Christopher Silva, individually on behalf of himself and all others similarly situated, | : : : : | Case No. 20-cv-756-ARR-PK |
| Plaintiffs, | : | |
| v. | : : : | |
| Hornell Brewing Co., Inc., Arizona Beverages USA LLC, Beverage Marketing USA, Inc. and Arizona Beverage Co., | : : : : | |
| Defendants. | : | |
| | x | |

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO STAY, OR IN THE ALTERNATIVE, DISMISS THIS ACTION

# **TABLE OF CONTENTS**

Table of Contents……………………………………………………………………………i

Table of Authorities………………………………………………………………ii - vi

INTRODUCTION…………………………………………………………………...1

LEGAL ARGUMENT……………………………………………………………….2

    I.    There is No Basis for a Stay Under the Primary Jurisdiction Doctrine…………...2

    II.    Plaintiff's New York GBL Claims are Well-Pled………………………………...9

    III.    Plaintiff's Claims Under the Consumer Protection Laws of States Other Than New York Are Well-Pled and Should Not Be Stricken…………………...13

    IV.    Plaintiff Gave Defendants Notice of Their Breach of Warranty………………...14

    V.    The FAC Properly Alleges a Claim Under the Magnuson Moss Warranty Act……………………………………………………………...16

    VI.    Plaintiff's Unjust Enrichment Claim is Not Duplicative………………………...17

    VII.    Plaintiff Has Standing to Pursue Injunctive Relief………………………………19

CONCLUSION………………………………………………………………………..22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abraham v. Volkswagen of Am., Inc.*,
795 F.2d 238 (2d Cir. 1986)..................................................................16

*Ackerman v. Coca-Cola Co.*,
No. CV-09-0395 (JG) (RML),
2010 U.S. Dist. LEXIS 73156 (E.D.N.Y. Jul. 21, 2010)......................10, 11, 18, 20

*Allen v. ConAgra Foods, Inc.*,
No. 13-cv-01279-JST,
2013 U.S. Dist. LEXIS 125607 (N.D. Cal. Sept. 2, 2013) ....................14

*Ault v. J.M. Smucker Co.*,
No. 13 Civ. 3409 (PAC),
2014 U.S. Dist. LEXIS 67118 (S.D.N.Y. May 14, 2015) .................5, 16

*In re Avon Anti-Aging Skincare Creams & Prods. Mktg. & Sales Practices Litig.*,
2015 U.S. Dist. LEXIS 133484 (S.D.N.Y. Sept. 30, 2015)....................21

*In re Bayer Corp. Combination Aspirin Products Mktg. & Sales Practices Litig.*,
701 F. Supp. 2d 356 (E.D.N.Y. 2010) ....................................................19

*Belfiore v. Procter & Gamble Co.*,
94 F. Supp. 3d 440 (E.D.N.Y. 2015) ......................................................20

*Brady v. Basic Research, L.L.C.*,
101 F. Supp. 3d 217 (E.D.N.Y. 2015) ...............................................16, 17

*Brazil v. Dole Packaged Foods, LLC*,
660 Fed. Appx. 531 (9th Cir. 2016)..........................................................5

*Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*,
373 F.3d 296 (2d Cir. N.Y. 2004)............................................................17

*Chaluisan v. Simsmetal E. LLC*,
698 F. Supp. 2d 397 (S.D.N.Y. 2010)......................................................17

*Children's Health Def. v. Beech-Nut Nutrition Co.*,
No. 2019 CA 004475 B,
2020 D.C. Super. LEXIS 3 (D.C. Apr. 8, 2020)..................................4, 8

*Cliffstar Corp. v. Elmar Indus., Inc.*,
254 A.D.2d 723 (1998) ............................................................................14

*In re Containership Co.*,
No. 11-12622 (SHL),
2012 Bankr. LEXIS 444 (Bankr. S.D.N.Y. Feb. 10, 2010) .......................................3

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956 (9th Cir. 2018) .............................................................20

*De Lacour v. Colgate-Palmolive Co.*,
No. 16-CV-8364 (RA),
2017 U.S. Dist. LEXIS 211395 (S.D.N.Y. Dec. 22, 2017) ....................................4

*Diaz v. Paragon Motors of Woodside, Inc.*,
424 F. Supp. 2d 519 (E.D.N.Y. 2006) ...........................................12, 16

*Ebin v. Kangadis Food Inc.*,
No. 13 Civ. 2311 (JSR), 2013
2013 U.S. Dist. LEXIS 107224 (S.D.N.Y. July 25, 2013) ...................................12

*In re Edgewell Personal Care Co. Litig.*,
No. 16-cv-3371 (KAM)(RLM),
2018 U.S. Dist. LEXIS 209023 (E.D.N.Y. Sep. 4, 2018) .......................................4

*Elkind v. Revlon Consumer Prod Corp.*,
No. 14-CV-2484 JS AKT,
2015 U.S. Dist. LEXIS 63464 (E.D.N.Y. May 14, 2015) .......................................6

*Ellis v. Tribune Television Co.*,
443 F.3d 71 (2d Cir. 2006)...........................................................2, 3, 6

*Foman v. Davis*,
371 U.S. 178 (1962)................................................................22

*In re Frito-Lay*,
2013 U.S. Dist. LEXIS 123824 ....................................2, 5, 7, 11, 13, 15

*Gasser v. Kiss My Face, LLC*,
No.17-cv-01675-JSC
2017 U.S. Dist. LEXIS 175273 (N.D. Cal. Oct. 23, 2017)......................................6

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
317 F.R.D. 374 (S.D.N.Y. 2016) ........................................................21

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
8 F. Supp. 3d 467 (S.D.N.Y. 2014)........................................5, 6, 11, 17

*Goya Foods, Inc. v. Tropicana Products, Inc.*,
846 F.2d 848 (2d Cir. 1988).............................................................2, 4

*In re Hain Celestial Seasonings Prods. Consumer Litig.*,
   No. SACV 13-1757-AG,
   2016 U.S. Dist. LEXIS 186667 (C.D. Cal. Nov. 7, 2016) ......................................................7

*Hasemann v. Gerber Prods. Co.*,
   15-CV-2995 (MKB),
   2016 U.S. Dist. LEXIS 134019, *34 (E.D.N.Y. Sept. 28, 2016)……………………………21

*Hemy v. Perdue Farms, Inc.*,
   No. 11-888,
   2011 U.S. Dist. LEXIS 137923 (D.N.J. Nov. 30, 2011) ......................................................11

*Henry v. Daytop Vill., Inc.*,
   42 F.3d 89 (2d Cir. 1994) ..................................................................................................17

*Hidalgo v. Johnson & Johnson Consumer Cos.*,
   148 F. Supp. 3d 285 (S.D.N.Y. 2015)..................................................................................21

*Holve v. McCormick & Co.*,
   334 F. Supp. 3d 535 (W.D.N.Y. 2018) ................................................................................20

*Hubbard v. Gen. Motors Corp.*,
   No. 95-CV-4362,
   1996 U.S. Dist. LEXIS 6974 (S.D.N.Y. May 22, 1996) ......................................................15

*Kaatz v. Hyland's Inc.*,
   No. 16-CV-237,
   2016 U.S. Dist. LEXIS 87348 (S.D.N.Y. July 6, 2016) ......................................................16

*Kane v. Chobani, LLC*,
   645 Fed. Appx. 593 (9th Cir. 2016)..................................................................................5, 6

*In re Kind LLC "Healthy & All Natural" Litig.*,
   No. 15-MD-2645 (WHP)
   2019 U.S. Dist. LEXIS 21892 ..........................................................................................6, 7, 8

*In re KIND LLC "Healthy & All Natural" Litig.*,
   287 F. Supp. 3d 457 (S.D.N.Y. 2018)..................................................................................8

*Lieberson v. Johnson & Johnson Consumer Cos.*,
   865 F. Supp. 2d 529 (D.N.J. 2011) ....................................................................................10

*Mendelson v. Gen. Motors Corp.*,
   105 Misc. 2d 346, 432 N.Y.S.2d 132 (N.Y. Sup. Ct. Nassau Co. 1980), aff'd,
   81 A.D.2d 831, 441 N.Y.S.2d 410 (2d Dep't 1981)..............................................................15

*Organic Consumers Ass'n v. General Mills, Inc.*,
    No. 2016 CA 6309 B,
    2017 D.C. Super. LEXIS 4, 2017 D.C. Super. LEXIS 4 ......................................................4, 7

*Paulino v. Conopco, Inc.*,
    No. 14-CV-5145 JG RML,
    2015 U.S. Dist. LEXIS 108165 (E.D.N.Y. Aug. 17, 2015)..........................................14, 15, 16

*Petrosino v. Stearn's Products, Inc.*,
    No. 7:16-cv-07735-NSR,
    2018 U.S. Dist. LEXIS 55818 (S.D.N.Y. March 30, 2018) .............................3, 4, 6, 9, 19, 20

*Price v. L'Oreal USA, Inc.*,
    17 Civ. 614 (LGS)
    2018 U.S. Dist. LEXIS 138473 (S.D.N.Y. Aug. 15, 2018)....................................................12

*Quinn v. Walgreen Co.*,
    958 F. Supp. 2d 533 (S.D.N.Y. 2013).......................................................................................15

*Silva v. Smucker Natural Foods, Inc.*,
    No. 14-CV-6154 RML,
    2015 U.S. Dist. LEXIS 122186 (E.D.N.Y. Sept. 14, 2015)..................................................4, 9

*Sitt v. Nature's Bounty, Inc.*,
    No. 15-CV-4199 (MKB),
    2016 U.S. Dist. LEXIS 131564 (E.D.N.Y. Sept. 26, 2016).............................................17, 20

*St. John's Univ., New York v. Bolton*,
    757 F. Supp. 2d 144 (E.D.N.Y. 2010) .....................................................................................17

*Suarez v. Cal. Nat. Living, Inc.*,
    17 CV 9847 (VB),
    2019 U.S. Dist. LEXIS 34634 (S.D.N.Y. Mar. 4, 2019) ..................................................14, 17

*Tomasino v. Estee Lauder Companies Inc.*,
    44 F. Supp. 3d 251 (E.D.N.Y. 2014) .......................................................................................15

*In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig.*,
    No. 08-939,
    2009 U.S. Dist. LEXIS 82833 (D.N.J. Sept. 10, 2009) ...........................................................10

*Toxin Free USA v. J.M Smucker Co.*,
    2019 CA 3192 B,
    2019 D.C. Super. LEXIS 15 (D.C. Nov. 6, 2019) ..................................................................3, 9

*Tyman v. Pfizer, Inc.*,
No. 16-CV-06941 (LTS) (BCM),
2017 U.S. Dist. LEXIS 212879 (S.D.N.Y. Dec. 27, 2017) ...............................................11, 15

*United States v. W. Pac. R.R. Co.*,
352 U.S. 59, 77 S. Ct. 161, 1 L. Ed. 2d 126, 135 Ct. Cl. 997 (1956) ......................................2

*Warner v. StarKist Co.*,
No. 1:18-vb-00406-GLS-ATB,
2019 U.S. Dist. LEXIS 48587 (N.D.N.Y. Mar. 25, 2019)......................................................18

**Statutes**

15 U.S.C. 2301(6)(A)...............................................................................................................16

FED. R. CIV. P. 15(a)(2) ..........................................................................................................22

FRCP Rule 8 .....................................................................................................................13, 17

FRCP Rule 9(b)..........................................................................................................10, 11, 13

Magnuson Moss Warranty Act ...................................................................................................2

N.Y. U.C.C. ........................................................................................................................15, 16

New Jersey Consumer Fraud Act ..............................................................................................10

New York General Business Law §§ 349 and 350 ...........................................................1, 10, 18

NY General Business Law § 392-b ...........................................................................................18

FRCP  12(b)(6) ...........................................................................................................................9

## INTRODUCTION

By representing its Fruit Snacks Product ("the Product") as "All Natural," Defendants Hornell Brewing Co., Inc., Arizona Beverages USA LLC, Beverage Marketing USA, Inc. and Arizona Beverage Co. ("Defendants") can, and do, charge a premium price for it. Unfortunately for consumers, including Plaintiff Christopher Silva ("Plaintiff"), the Product is not actually natural, but rather contains a litany of synthetic ingredients.

Defendants do not contest that their representation is false. Rather, they ask the Court to needlessly prolong this litigation by granting a stay while waiting for the FDA to define "natural" in food labeling and advertising, despite no indication that any such definition is imminent, and no showing that it would impact Plaintiff's claims which are subject to the reasonable consumer standard.

In the alternative, Defendants request dismissal of each of Plaintiff's causes of action based on a hodgepodge of arguments which have been consistently rejected by courts in similar deceptive "natural" labeling cases in this Circuit. Contrary to Defendants' argument, Plaintiff's claims under New York General Business Law §§ 349 and 350 are well-pled inasmuch as they allege that Plaintiff viewed and relied upon the deceptive "All Natural" representation on the front label of the Product. And Plaintiff has sufficiently alleged an injury by alleging that he would not have purchased the Product, or paid more for the Product than he otherwise would have, absent the false "All Natural" labeling. Plaintiff's claims under the consumer protection laws of other states are based on those same facts and are also adequately pled.

Nor should the Court dismiss Plaintiff's breach of warranty claims. Defendants do not contest that the "All Natural" representation is an actionable warranty under New York law. Nor is there any merit to their argument that Plaintiff failed to provide timely notice of the breach.

Indeed, the First Amended Complaint ("FAC") (ECF 16) alleges that Plaintiff sent Defendants a letter and draft complaint alleging breach of warranty mere weeks after purchasing the Product. And because Plaintiff's New York breach of warranty claim is sufficient, so is his cause of action under the Magnuson Moss Warranty Act, which merely incorporates and federalizes state law.

Further, Plaintiff's unjust enrichment claim cannot be dismissed as duplicative because Plaintiff is permitted to plead claims in the alternative, and the because the unjust enrichment claim has separate elements and relies on an independent factual predicate from his NY GBL and warranty claims. Finally, Plaintiff has standing to pursue injunctive relief insofar as he has alleged an intent to buy the Product in the future and thus would be subject to future harm if Defendants' deceptive practices are not corrected.

## LEGAL ARGUMENT

### I.     There is No Basis for a Stay Under the Primary Jurisdiction Doctrine

The Second Circuit has interpreted the primary jurisdiction doctrine to be narrow and rarely applicable. *See Goya Foods, Inc. v. Tropicana Products, Inc*., 846 F.2d 848, 851 (2d Cir. 1988); *see also In re Frito-Lay*, 2013 U.S. Dist. LEXIS 123824, *23("The primary jurisdiction doctrine is relatively narrow in scope.").   This doctrine "is concerned with 'promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties.'" *Ellis v. Tribune Television Co*., 443 F.3d 71, 81 (2d Cir. 2006) (quoting *United States v. W. Pac. R.R. Co*., 352 U.S. 59, 63, 77 S. Ct. 161, 1 L. Ed. 2d 126, 135 Ct. Cl. 997 (1956)). Courts generally consider four factors in deciding whether to apply the primary jurisdiction doctrine: "(1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of

expertise; (2) whether the question at issue is particularly within the agency's discretion; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made." *Ellis*, 443 F.3d at 82-83. In weighing these factors, the Second Circuit has further instructed courts to "balance the advantages of applying the doctrine against the potential costs resulting from complications and delay in the administrative proceedings." *Id*. at 83. Moreover, "[t]he party seeking to impose the primary jurisdiction doctrine bears the burden of demonstrating its application . . . [and] [c]ourts should refrain from reflexively applying the doctrine simply because litigation touches on an area within the expertise of an agency." *In re Containership Co*., No. 11-12622 (SHL), 2012 Bankr. LEXIS 444, *18-19 (Bankr. S.D.N.Y. Feb. 10, 2010) (internal citations omitted).

While Plaintiff agrees that "natural" food labeling is within the particular discretion of the FDA, the remaining three *Ellis* factors weigh heavily against the application of the primary jurisdiction doctrine. First, Defendants have overstated the need to rely on the FDA's expertise to resolve the central issues in this case. Plaintiffs' claims do not require this Court to define "natural" but rather to determine whether Defendants' labelling of its Product as "All Natural" is misleading to a reasonable consumer. *See Petrosino v. Stearn's Products, Inc.,* No. 7:16-cv-07735-NSR, 2018 U.S. Dist. LEXIS 55818 at *30 (S.D.N.Y. March 30, 2018) ("Plaintiff's claims do not require a finding of what 'natural' means. Rather, the claims ask whether a reasonable consumer acting reasonably would be misled by a label displaying the word 'natural' when the product contains synthetic ingredients."); *Toxin Free USA v. J.M Smucker Co.*, 2019 CA 3192 B, 2019 D.C. Super. LEXIS 15, *15-17 (D.C. Nov. 6, 2019) ("the Court is being asked to address whether a reasonable consumer is likely to be deceived by the use of the term 'natural' on foods that contain synthetic residues . . . The claims brought by [plaintiff] fall directly under

the conventional experience of the judiciary.") (internal quotations omitted); *Children's Health Def. v. Beech-Nut Nutrition Co*., No. 2019 CA 004475 B, 2020 D.C. Super. LEXIS 3, *17-18 (D.C. Apr. 8, 2020) ("this case, which concerns whether Defendants' marketing practices misled consumers, appears to concern issues that fall 'within the conventional experience of the court system.'" (quoting *Organic Consumers Ass'n v. General Mills, Inc.,* No. 2016 CA 6309 B*, 2017 D.C. Super. LEXIS 4,* 2017 D.C. Super. LEXIS 4, at *20).

Courts are well-equipped to assess whether a label is misleading. *See In re Edgewell Personal Care Co. Litig*., No. 16-cv-3371 (KAM)(RLM), 2018 U.S. Dist. LEXIS 209023, *14-16, (E.D.N.Y. Sep. 4, 2018) (collecting cases); *De Lacour v. Colgate-Palmolive Co*., No. 16-CV-8364 (RA), 2017 U.S. Dist. LEXIS 211395, *5-6 (S.D.N.Y. Dec. 22, 2017) ("[courts have] consistently held that the main issue in this case—namely, whether advertising is deceptive or misleading to consumers—is squarely within judges' expertise.").  Indeed, numerous courts within this Circuit and elsewhere have denied motions to stay labeling claims such as Plaintiff's under the primary jurisdiction doctrine on the grounds that the question of whether Defendants' labels are deceptive well within the conventional experience of judges. *See e.g. Petrosino*, 2018 U.S. Dist. LEXIS 55818, at *30 ("the issue at stake is legal in nature and lies within the realm of judicial competence." (internal citations omitted); *Silva v. Smucker Natural Foods, Inc.*, No. 14-CV-6154 RML, 2015 U.S. Dist. LEXIS 122186, at *8 (E.D.N.Y. Sept. 14, 2015) ("[A]ssessing whether a label is false or deceptive is well within the traditional realm of the court's competence and does not necessitate deferring to an agency's technical expertise." (citing *Goya Foods*, 846 F.2d at 851));  *In re Frito-Lay,* 2013 U.S. Dist. LEXIS 123824, at *23 ("This case is far less about science than it is about whether a label is misleading, and the reasonable-consumer inquiry upon which some of the claims in this case depends is one to which courts are eminently well

4

suited, even well versed.") (internal quotations omitted); *Goldemberg v. Johnson & Johnson Consumer Cos*., 8 F. Supp. 3d 467, 476 (S.D.N.Y. 2014) (finding that whether the use of the term "Active Naturals" is deceptive or misleading is a question which courts are well suited to entertain); *Ault v. J.M. Smucker Co*., No. 13 Civ. 3409 (PAC),  2014 U.S. Dist. LEXIS 67118, *15 (S.D.N.Y. May 14, 2015) (finding that the primary jurisdiction doctrine does not apply because "[t]he issue is whether the use of the phrase 'All Natural' was likely to mislead a reasonable consumer acting reasonably under the circumstances Determining whether a reasonable consumer acting reasonably would find the term 'All Natural' deceptive when a product contains synthetic ingredients is a question this Court and Jury are well suited to entertain.") (quotations and citation omitted).

Defendants rely on *Kane v. Chobani, LLC,* 645 Fed. Appx. 593, 594-95 (9th Cir. 2016) for the proposition that determining whether "natural" labeling is misleading requires the expertise of the FDA.  (Def. Mem. at 5-6).  But shortly after the decision in *Kane*, the Ninth Circuit affirmed in part and reversed in part a district court's dismissal in a case involving allegedly deceptive "all natural" claims on packaged fruit products, and remanded the case for further proceedings. *See Brazil v. Dole Packaged Foods, LLC*, 660 Fed. Appx. 531 (9th Cir. 2016). Significantly, the Ninth Circuit found that the district court's decision not to stay or dismiss the case under the primary jurisdiction doctrine did not constitute an abuse of discretion. *Id*. at 533. It is therefore questionable that *Kane* carries the weight Defendants ascribe to it. Moreover, the yogurt product at issue in *Kane* contained, in addition to the word "natural," the terms "evaporated cane juice," which the FDA stated it would issue final guidance on by the end of 2016. The Ninth Circuit concluded that staying the case eight months until the FDA issued a definition material to the product would not needlessly delay the case. *Kane*, 645 Fed. Appx. At

594.   In contrast, as set forth below, there is no pending proceeding or date in sight for the FDA to define "natural" in food products.  *See Gasser v. Kiss My Face, LLC*, No.17-cv-01675-JSC, 2017 U.S. Dist. LEXIS 175273, *30 (N.D. Cal. Oct. 23, 2017) (distinguishing *Kane* and declining to stay plaintiff's "natural" claims).

Second, there is no danger of inconsistent rulings, inasmuch as the FDA's definition of "natural" has little bearing on whether Defendants' labeling is misleading.  Defendants assert that this factor weighs in favor of granting a stay because there is a chance that courts will issue inconsistent rulings regarding the definition of the word "natural."  (Def. Mem. at 6).   As an initial matter, the fact that other courts may disagree with this Court regarding the definition of "natural" is not decisive here. "Instead, the danger of inconsistency on which the Court focuses is the danger that the FDA may issue guidance that conflicts" with the Court's ruling. *Elkind v. Revlon Consumer Prod Corp*., No. 14-CV-2484 JS AKT, 2015 U.S. Dist. LEXIS 63464, *23 (E.D.N.Y. May 14, 2015); see also *Ellis*, 443 F.3d at 88; *Goldemberg*, 8 F. Supp. 3d at 477.

Here, there is no "substantial danger" of inconsistent rulings between the FDA and the Court because Plaintiff's claims do not require a finding of what "natural" means. Rather, the claims ask whether a reasonable consumer acting reasonably would be misled by a label displaying the words "All Natural" when the product contains synthetic ingredients.  *See Petrosino*, 2018 U.S. Dist. LEXIS 55818, *30.  Consequently, "any FDA definition of 'natural' would not conclusively resolve [the] issue[s] in this case."  *In re Kind LLC "Healthy & All Natural" Litig*., No. 15-MD-2645 (WHP); 2019 U.S. Dist. LEXIS 21892, *10 (S.D.N.Y. Feb. 11, 2019);  *In re Frito-Lay*, 2013 U.S. Dist. LEXIS 123824, *28 ("There is no telling, if [the FDA] even chose to respond with any directive to the Court's referral, how the FDA would define the term ['natural'], and whether its definition would shed any further light on whether a reasonable

consumer is deceived by the 'All Natural' food label when it contains bioengineered ingredients").

Finally, the Fourth factor also weighs heavily against a stay because the FDA has given no indication that any regulations governing "natural" foods are imminent. The FDA announced its intention to promulgate such a definition more than four years ago, but since that time has "exhibited little discernible activity with respect to 'natural' rulemaking." *In re Kind LLC "Healthy & All Natural" Litig*., 2019 U.S. Dist. LEXIS 21892, *12; *see also Organic Consumers Ass'n*, 2019 D.C. Super. LEXIS 5, at *9-10 ("The FDA closed the notice and comment period in May 2016, and, almost three years later, still has not set forth definitive regulations on the term."); *In re Hain Celestial Seasonings Prods. Consumer Litig*., No. SACV 13-1757-AG (ANx) (dkt. 315-317), 2016 U.S. Dist. LEXIS 186667 (C.D. Cal. Nov. 7, 2016) (lifting stay imposed pursuant to primary jurisdiction doctrine after six months of no indication that the FDA had taken any rulemaking or informal guidance action on the question of "natural" food labeling).

Defendants rely on isolated comments by Dr. Susan Mayne, the FDA's Director of the Center for Food Safety and Applied Nutrition from September 2019 to contend that the FDA will promulgate a definition of "natural" in short order. (Def. Mem. at 7). But these vague remarks[1], which provide no timeline for promulgating a definition of "natural" are insufficient to justify a stay. In January 2018, faced with similarly indefinite assurances from FDA Commissioner Scott Gottlieb that the agency was "looking at how to define 'healthy' and 'natural' more uniformly," the court in *In re Kind, supra* lifted a stay on a "natural" labeling claim, remarking "[t]here is no indication whether the FDA is earnestly working toward a uniform 'natural' standard, or whether

---

[1]  See United States Food and Drug Administration, Remarks by Dr. Susan Mayne at the Public Meeting on Horizontal Approaches to Food Standards of Identity Modernization (September 27, 2019), available at https://www.fda.gov/newsevents/speeches-fda-officials-remarks-dr-susan-mayne-public-meeting-horizontal-approachesfood-standards-identity-modernization.

it has shelved that effort . . . [a]bsent any word from the FDA about its current progress, this Court cannot sit idly by on an illusory assurance that something is likely to happen." *In re Kind* 2019 U.S. Dist. LEXIS 21892, at *31-32.

As with Commissioner Gottlieb's remarks, Dr. Mayne's comments do not indicate that a definition of "natural" is imminent. First, Dr. Mayne did not state when the FDA planned to issue guidance regarding the term "natural," only that the FDA was "working diligently." This vague pronouncement stands in stark contrast to Dr. Mayne's promise that the FDA was "close" to proposing a definition for the term "Healthy."[2] *In re KIND LLC "Healthy & All Natural" Litig.*, 287 F. Supp. 3d 457, 470 (S.D.N.Y. 2018). ("The pace of the FDA's process is still unclear. There is no indication whether the FDA is earnestly working toward a uniform 'natural' standard, or whether it has shelved that effort."). Second, Dr. Mayne's remarks were made in September 2019, almost nine months ago, yet FDA has still not issued guidance regarding "natural" food labeling and it is unclear when, if ever, such guidance might be forthcoming.

Nor, as Defendants suggest, have Dr. Mayne's comments shifted the tide in favor of staying "natural" litigation. In fact, a number of courts have refused to stay "natural" claims in the months since Dr. Mayne's remarks. *See e.g. Children's Health Def. v. Beech-Nut Nutrition Co.*, No. 2019 CA 004475 B 2020 D.C. Super. LEXIS 3, *17-18 (D.D.C. Apr. 8, 2020) (declining to stay natural claims under primary jurisdiction doctrine because such claims "fall within the conventional experience of the court system. In addition, it has now been four years since the FDA's comment period closed and the FDA has yet to issue any rulemaking or guidance.") (internal quotations and citations omitted); *Toxin Free USA*, 2019 D.C. Super. LEXIS 15, *16-17 ("As we near the end of 2019, the FDA has not yet issued any guidance on

---

[2] *See Id.*

what products may be labeled "natural," despite the agency's 2018 letter to Congress stating that it had planned to take action this year.").

Accordingly, there is no basis for a stay.

## II.     Plaintiff's New York GBL Claims are Well-Pled

In the alternative, Defendants request that the Court dismiss each of Plaintiff's causes of action for failure to state a claim pursuant to Rule 12(b)(6).  The Court should deny this request inasmuch as Plaintiff's claims are well-pled under established Second Circuit caselaw regarding deceptive "natural" product labeling and advertising.

First, Defendants advance the perplexing argument that Plaintiff has not adequately identified the advertising that he relied upon in purchasing the Products.[3] (Def. Mem. at 9-10). But the FAC identifies the Product label at issue and even includes a picture of that label.  FAC ¶ 6.  The FAC further specifies the portion of the label that Plaintiff alleges is deceptive and misleading (the "All Natural" representation).  FAC ¶¶ 2, 6.  And the FAC alleges specifically when and where Plaintiff viewed the Product label, including the "All Natural" representation, and that he relied upon it in deciding to purchase the Product.  FAC ¶ 31.  These allegations are more than sufficient to identify the false advertisement at issue and connect it to Plaintiff's purchase of the Product.  *See Silva v. Smucker Natural Foods, Inc.*, No. 14-CV-6154 (JG)(RML), 2015 U.S. Dist. LEXIS 122186, *23-24 (E.D.N.Y. Sep. 14, 2015) (refusing to dismiss NY GBL §§ 349 and 350 claims where the complaint incorporated pictures of the product labeling, quoted the allegedly false portions of the labeling, and alleged that the Plaintiff

---

[3] It is unclear whether Defendants' motion contends that the Product's label is not an "advertisement."  In an abundance of caution, Plaintiff notes that it is well-established that Product labels qualify as advertisements under NY GBL § 350.  *See Petrosino*, 2018 U.S. Dist. LEXIS 55818, *18 ("'False Advertising' is defined by the GBL as 'advertising, including labeling.'") (quoting GBL § 350-a).

purchased and paid a premium for the Product based on the labeling).

Defendants' citations to nonbinding caselaw do not dictate a different result. Each of the cases cited by Defendants dismissed claims brought under the New Jersey Consumer Fraud Act[4], rather than the New York GBL, and none involve claims for deceptive "natural" labeling. Beyond those basic factual distinctions, Defendants' cases are inapposite because the plaintiffs in those cases failed to identify where they viewed the representations, when they were exposed to the representations, or why they believed the representations were misleading. as set forth above, Plaintiff has identified the Product labels he viewed and why he believes they were misleading. For example in *Lieberson v. Johnson & Johnson Consumer Cos*., 865 F. Supp. 2d 529 (D.N.J. 2011), cited by Defendant, the court dismissed Plaintiff's claims with regard to allegedly false representations made in commercials, print ads, and websites because the Plaintiff did not specify in what medium she had seen the representations, when she had seen them, or that she actually viewed them. *Id*. at 539. Similarly, in *In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig*., No. 08-939, 2009 U.S. Dist. LEXIS 82833 (D.N.J. Sept. 10, 2009) the court dismissed claims regarding DVD marketing and advertising because "Plaintiffs fail[ed] to allege when [defendant] made its alleged misrepresentations and when, if ever, the Plaintiffs were exposed to those misrepresentations." *Id*. at *40. Here, in contrast, Plaintiff has alleged that the false "All Natural" representations appear on the Product labels, and that he saw the Product label in or about October 2019 when he purchased the Product. FAC ¶¶ 6 and 31. And, unlike *Hemy v. Perdue Farms, Inc*., No. 11-888, 2011 U.S. Dist. LEXIS 137923, *48 (D.N.J. Nov. 30, 2011) where the court found Plaintiff's allegation that "Humanely Raised" included the manner

---

[4] Notably, the New Jersey Consumer Fraud Act requires plaintiffs to plead with particularity under FRCP Rule 9(b) while NY GBL §§ 349 and 350 do not. *See Ackerman v. Coca-Cola Co*., No. CV-09-0395 (JG) (RML), 2010 U.S. Dist. LEXIS 73156, *87 (E.D.N.Y. Jul. 21, 2010).

in which chickens were slaughtered to be conclusory, Plaintiff has explained that his

understanding of the term "All Natural" means that the Product is free from synthetic

ingredients, and has provided detailed explanations as to why a number of the ingredients in the

Product would not be considered "natural" by a reasonable consumer.  (FAC ¶¶ 7,9,10, 31).

Next Defendants contend that Plaintiff has not pled a cognizable injury.  (Def. Mem. at

10-11).  In fact, Plaintiff has alleged that he paid more for the Product than he otherwise would

have absent the false "All Natural" representation.  (FAC ¶ 32).  Such an allegation of payment

of price premium is sufficient to state a claim under New York's consumer protection laws.  *See,*

*e.g., Goldemberg*, 8 F. Supp. 3d at 481 ("[A] plaintiff may properly allege . . . the price of the

product was inflated as a result of [the] defendant's deception.") (collecting cases); *Ackerman*,

2010 U.S. Dist. LEXIS 73156, at *88 ("Injury is adequately alleged under GBL §§ 349 or 350 by

a claim that a plaintiff paid a premium for a product based on defendants' inaccurate

representations.").

Contrary to Defendants' argument, Plaintiff is not required to allege how much he paid

for the Product or provide the prices of comparable products at the pleading stage.  *In re Frito-*

*Lay*, 2013 U.S. Dist. LEXIS 123824, at *75. ("[Defendant] also points to no case holding that

plaintiffs must allege at what price they purchased the products, and the Court finds no reason to

require such pleading . . . "); *Tyman v. Pfizer, Inc.*, No. 16-CV-06941 (LTS) (BCM), 2017 U.S.

Dist. LEXIS 212879, *27 (S.D.N.Y. Dec. 27, 2017) ("[Plaintiffs]do not, at the pleading stage,

need to allege specific prices, nor that they would have paid less for specific comparable

products, to adequately allege a price premium theory of injury under the Rule 9(b) pleading

standard.") (internal quotation marks omitted).

Defendants' additional contentions misunderstand or mischaracterize Plaintiff's damages

allegations.  First, Defendants argue that Plaintiff has not adequately pled "the basis for his allegation that he paid a premium" and suggests that Plaintiff may have paid more because of where or in what quantity or size he purchased the Product.  (Def. Mem at p. 10).   But a price premium injury is not about paying more than similar alternative products.  Rather, it is a measure of how much more Plaintiff paid for the Product than he otherwise would have absent the false "All Natural" representation.  *See* FAC ¶ 32 ("Had Defendants not made the false, misleading, and deceptive representation that the Product was 'All Natural,' Plaintiff would not have been willing to pay the same amount for the Product . . . "); *see also Price v. L'Oreal USA, Inc.*, No. 17 Civ. 614 (LGS), 2018 U.S. Dist. LEXIS 138473, at *24 (S.D.N.Y. Aug. 15, 2018) (accepting a calculation of price premium damages that measured the difference between what consumers would hypothetically pay for a product with and without the deceptive representation).

Nor is Plaintiff's entitlement to price premium damages contradicted by his assertion in his initial disclosures that he is also entitled to damages in the amount of the full purchase price of the Product under his breach of warranty claims. *See Ebin v. Kangadis Food Inc.*, No. 13 Civ. 2311 (JSR), 2013 U.S. Dist. LEXIS 107224, at * 9 (S.D.N.Y. July 25, 2013) ("defendants persuasively argue that on plaintiff's… NYGL claims, the proper measure of damages is the benefit of the bargain.  But defendant cites no authority to rebut plaintiffs' contention that they may recover the full retail price paid on their state-law claims for breach of warranty.") (citing *Diaz v. paragon Motors of Woodside, Inc.*, 424 F. Supp. 2d 519 (E.D.N.Y. 2006).  Indeed, the FAC is consistent with Plaintiff's initial disclosures and asserts that "had Defendants not made the false, misleading, and deceptive representation that the Product was 'All Natural,' . . . [Plaintiff] would not have been willing to purchase the Product" (FAC ¶ 32) and that "as a direct

and proximate result of Defendants' breach of express warranty, Plaintiff and Class Members were damaged *in the amount of the price they paid for the Product*, in an amount to be proven at trial.  FAC ¶ 32 (emphasis added).  Simply put, Plaintiff is entitled to, *inter alia*, price premium damages under his NY GBL claims and a full refund under his breach of warranty claims.

### III.   Plaintiff's Claims Under the Consumer Protection Laws of States Other Than New York Are Well-Pled and Should Not Be Stricken

Defendants next ask the Court, at the pleadings stage, to dismiss Plaintiff's claims under the consumer protection laws of states other than New York. (Def. Mem. at 11-12).   Defendants contend that that the FAC merely list the statutes of 41 states and the District of Columbia without providing the factual basis for those claims.  Def. Mem. 12.  This is incorrect.  The FAC provides a detailed explanation of how Defendants made the material representation that the Product is "All Natural, when it actually contains multiple synthetic ingredients, and in reliance upon this representation, Plaintiff and the putative class members paid a premium price for the Products. FAC ¶¶ 77-80.  The allegations in the FAC are sufficient to meet the pleading requirements of FRCP Rule 8 which apply to Plaintiff's NY GBL claims (*See* Section II, note 5).  They also meet the pleading-with-particularity requirement of FRCP 9(b) to the extent required by the consumer protection laws of other states by describing the "who," "what," "when," "where," and "how" of Defendants' misconduct. *In Re Frito-Lay*, 2013 U.S. Dist. LEXIS 123824, at *72.    Per the Complaint, Defendants (who) (FAC. ¶ 31) market the Product as "All Natural" on the front label ("where") (FAC. ¶ 6) when it actually contains synthetic ingredients (what) (FAC. ¶¶ 1,7, 31), which Plaintiff purchased in October 2019 (when) (FAC. ¶¶ 4, 31) in reliance on the "All Natural" misrepresentation, causing Plaintiff to suffer economic loss (how) (Compl. ¶¶ 24, 25, 31). Courts have held that similar allegations satisfied Rule 9(b)'s heightened pleading standard. *See Frito-Lay*, 2013 U.S. Dist. LEXIS 123824, at * 73-75.  Consequently, Plaintiff's claims for breach of

the consumer fraud statutes of 41 and the District of Columbia are adequately pled. *See Allen v. ConAgra Foods, Inc.*, No. 13-cv-01279-JST, 2013 U.S. Dist. LEXIS 125607, at **35 (N.D. Cal. Sept. 2, 2013) (declining to dismiss claim alleging violations of 48 state consumer protection statutes).

## IV. Plaintiff Gave Defendants Notice of Their Breach of Warranty

The pre-suit notice requirement for breach of express warranty only requires plaintiffs to "alert [Defendant] that the transaction [was] troublesome and [does] not need to include a claim for damages or threat of future litigation." *Cliffstar Corp. v. Elmar Indus., Inc*., 254 A.D.2d 723, 724 (1998). The FAC alleges that Plaintiff purchased the Product in October 2019 and mailed Defendants a pre-suit notice letter on October 25, 2019, prior to filing the original complaint in this case. Attached to that letter was a draft complaint which asserted a cause of action for, *inter alia*, breach of express warranty. FAC ¶¶ 31, 88. This provided the Defendants with all the information they needed to remedy the breach and was more than sufficient under New York law to provide Defendants with notice. *See Paulino v. Conopco, Inc*., No. 14-CV-5145 JG RML, 2015 U.S. Dist. LEXIS 108165, at *3-5 (E.D.N.Y. Aug. 17, 2015); *Suarez v. Cal. Nat. Living, Inc*., 17 CV 9847 (VB), 2019 U.S. Dist. LEXIS 34634, *21 (S.D.N.Y. Mar. 4, 2019) (holding that a pre-suit notice letter asserting breach of warranty was sufficient to satisfy the notice requirement).

Incredibly, Defendants contend that this delay of, at most, several weeks between when Plaintiff purchased the Product and when he gave Defendants notice was not "within a reasonable time" after discovery of the breach. (Def. Mem. at 13-14). Defendants cite no caselaw standing for the proposition that Plaintiff's breach of warranty claim may be dismissed simply because the FAC does not specifically allege that October 2019 was the first time that he

purchased the Product or when he discovered that it was not "All Natural." In *Quinn v. Walgreen Co*., 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013), cited by Defendant, the court dismissed warranty claims where the plaintiffs failed to allege that they provided timely notice of breach of warranty at all. *Id.* at 544. In *Frito-Lay*, the court dismissed breach of warranty claims brought by New York and Florida plaintiffs because they failed to allege when, if at all, they notified the defendant of the alleged breach. 2013 U.S. Dist. LEXIS 123824, at *87. In *Tomasino v. Estee Lauder Companies Inc*., 44 F. Supp. 3d 251 (E.D.N.Y. 2014), the court dismissed warranty claims under New York law because "the two to three years that the plaintiff allowed to pass from 'in or about 2010' [when she purchased the cosmetics at issue] until the time of her letter on July 3, 2013, constituted an unreasonable delay." *Id*. at 260. Finally, the express warranty claim was dismissed in *Tyman v. Pfizer, Inc*., No. 16-CV-06941, 2017 U.S. Dist. LEXIS 212879 (S.D.N.Y. Dec. 27, 2007) because the complaint did not allege when plaintiffs purchased the products at issue. *Id.* at *60. Here, in stark contrast, the FAC alleges when Plaintiff bought the Product and when he notified Defendants of their breach, mere weeks later.

The Court cannot hold as a matter of law that this brief delay was unreasonable. Whether a timeframe is reasonable "depends on the nature, purpose, and circumstances of the action." N.Y. U.C.C. Law § 1-205(a). "[T]he rule of requiring notification is designed to defeat commercial bad faith, not to deprive a good faith consumer of his remedy." N.Y. U.C.C. Law § 2-607, cmt. 4. Moreover, the sufficiency and timeliness of a delay is normally a question of fact for the jury. *See Paulino*, 2015 U.S. Dist. LEXIS 108165, at *5 (citing *Mendelson v. Gen. Motors Corp*., 105 Misc. 2d 346, 432 N.Y.S.2d 132, 136 (N.Y. Sup. Ct. Nassau Co. 1980), aff'd, 81 A.D.2d 831, 441 N.Y.S.2d 410 (2d Dep't 1981); *Hubbard v. Gen. Motors Corp*., No. 95-CV-4362, 1996 U.S. Dist. LEXIS 6974, at *13 (S.D.N.Y. May 22, 1996). Accordingly, Plaintiff's

pre-suit notice of Defendants' breach was not deficient in any way and his breach of express

warranty claim should not be dismissed.

**V.      The FAC Properly Alleges a Claim Under the Magnuson Moss Warranty-Act**

Defendants next claim the representations on its Products do not meet the definition of a

warranty under 15 U.S.C. 2301(6)(A). (Def. Mem. at 14-15).  This may be true, but an

alternative ground is available.  Although the MMWA provides a federal class action remedy for

express and implied breach of warranty claims, it "merely incorporates and federalizes state-law

breach of warranty claims." *Brady v. Basic Research, L.L.C.*, 101 F. Supp. 3d 217, 234

(E.D.N.Y. 2015); *see also Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 249 (2d Cir.

1986) (holding that state law governs implied warranty claims under the MMWA); *Diaz v.

Paragon Motors of Woodside, Inc.*, 424 F. Supp. 2d 519, 540 (E.D.N.Y. 2006) (holding that a

breach of express warranty under the MMWA is coextensive with New York State law);  *Kaatz

v. Hyland's Inc.*, No. 16-CV-237, 2016 U.S. Dist. LEXIS 87348, at *11 n.5 (S.D.N.Y. July 6,

2016) ("Although the MMWA is a federal statute, liability under it is based on state warranty

laws.").  Therefore, "plaintiffs' breach of express warranty and MMWA claims stand or fall

together." *Brady*, 101 F. Supp. 3d at 234.

Under New York law, any "affirmation of fact or promise made by the seller to the buyer

which relates to the goods and becomes part of the basis of the bargain creates an express

warranty."  N.Y. U.C.C. Law § 2-313(1)(a)).  The term "All Natural" is such an "affirmation of

fact." *See Ault*, 2014 U.S. Dist. LEXIS 67118, at *21 (holding that a representation relative to

whether a product is "natural" constitutes "an actionable warranty"); *Paulino*, 2015 U.S. Dist.

LEXIS 108165, at *7 ( holding that "Suave Naturals" representation on  personal care products

was a warranty under New York Law); *Goldemberg*, 8 F. Supp. 3d at 482–83  (concluding that

"Active Naturals" label on personal care products constituted an actionable warranty). Since

Plaintiff's representations constitute an express warranty under New York law, they also

constitute one under the MMWA. *See Sitt v. Nature's Bounty, Inc.*, No. 15-CV-4199 (MKB),

2016 U.S. Dist. LEXIS 131564, *57 (E.D.N.Y. Sept. 26, 2016) (holding that because

defendant's "natural" representation constituted an express warranty under New York law, it was

also a warranty under the MMWA); Suarez, 2019 U.S. Dist. LEXIS 34634, *22 ("because

plaintiff's underlying damages claims survive dismissal, plaintiff's MMWA claim does, as

well."); *Brady*, 101 F. Supp. 3d at 235 (denying a motion to dismiss MMWA because the

complaint pled a New York breach of express warranty claim).

## VI.      Plaintiff's Unjust Enrichment Claim is Not Duplicative

The basic elements of an unjust enrichment claim in New York, which are properly pled

in the FAC, are that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and

good conscience militate against permitting defendant to retain what plaintiff is seeking to

recover. *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. N.Y. 2004).

Defendants do not dispute that Plaintiff has pled and factually supported these elements. Rather,

Defendants argue Plaintiff's claim must be dismissed because it is duplicative. (Def. Mem. at

15-16). But, under Rule 8(d)(2), "a plaintiff may plead two or more statements of a claim, even

within the same count, regardless of consistency." *Henry v. Daytop Vill., Inc*., 42 F.3d 89, 95 (2d

Cir. 1994); *see also St. John's Univ., New York v. Bolton*, 757 F. Supp. 2d 144, 183 (E.D.N.Y.

2010) "[t]he Federal Rules of Civil Procedure explicitly permit Plaintiff to assert claims in the

alternative," regardless of consistency. And, as set forth in *Chaluisan v. Simsmetal E. LLC*, 698

F. Supp. 2d 397 (S.D.N.Y. 2010), it is inappropriate at the motion to dismiss phase to issue a

ruling as to whether an unjust enrichment claim is duplicative because that question may be

answered through discovery.

In any event, the elements of Plaintiff's unjust enrichment claim are not duplicative of his New York GBL and warranty claims. As the court recently explained in *Warner v. StarKist Co.*:

> [Defendant] argues that [plaintiff's] unjust enrichment claim must be dismissed because it is duplicative of his GBL claims. . . . [Defendant] fails to persuade the court that this claim should be dismissed at this stage. The elements for an unjust enrichment claim are distinct from the elements for GBL claims under §§ 349 and 350. . . . Thus, "a 'reasonable trier of fact could find unjust enrichment . . . without establishing all the elements for one of [plaintiff's other] claims sounding in law.'"

*Warner v. StarKist Co.*, No. 1:18-vb-00406-GLS-ATB, 2019 U.S. Dist. LEXIS 48587, at *6-7 (N.D.N.Y. Mar. 25, 2019) (citations omitted).

Moreover, Plaintiff's unjust enrichment claim is supported by an independent factual predicate. Specifically, the FAC alleges that Defendants violated NY General Business Law § 392-b, which makes it unlawful to falsely label a product. *See* FAC ¶ 16. Defendants' violation of NY GBL § 392-b (which does not allow for a private right of action) is separate from its breach of its warranties and violations of NY GBL §§ 349 and 350, but provides support for Plaintiff's allegations that Defendants were unjustly enriched. *See* FAC ¶ 104 ("Defendants' conduct violated, inter alia, state and federal law by manufacturing, advertising, marketing, and selling their Product while misrepresenting and omitting material facts.").

Because Plaintiffs may plead their unjust enrichment claims in the alternative to their other claims, and questions of fact remain as to all of Plaintiffs' claims, the Court should decline to dismiss Plaintiffs' unjust enrichment claim. Indeed, the Eastern District of New York sustained nearly identical unjust enrichment claims in *Ackerman v. Coca-Cola Co.*, No. 09-CV-395, 2013 U.S. Dist. LEXIS 184232 (E.D.N.Y. Jul. 17, 2013), and in *In re Bayer Corp.*

*Combination Aspirin Products Mktg. & Sales Practices Litig.*, 701 F. Supp. 2d 356 (E.D.N.Y. 2010) ("*In re Bayer*"), where it held:

> [P]laintiffs charge defendant with employing misleading statements about the virtues of the combination product to market them to consumers. Because of these misrepresentations, plaintiffs purchased the combination products and defendant retained those benefits. If the allegations in the Complaint are true, then defendant reaped a financial reward at plaintiffs' expense. This is sufficient to state a claim for unjust enrichment.

*In re Baye*r, 701 F. Supp. 2d at 384. Here, a plain reading of the FAC reveals that each of the elements necessary to sustain an unjust enrichment action has been pled.

## VII. Plaintiff Has Standing to Pursue Injunctive Relief

Plaintiff has standing to pursue injunctive relief because the inability of consumers to rely on the Product's labels in the future constitutes a threat of future harm, and Plaintiff has alleged that he would buy the Product in the future if it was in fact "All Natural."

Recently, in *Petrosino v. Stearn's Products, Inc.*, the court held that "a Plaintiff in a consumer protection suit has standing to seek injunctive relief regardless of any promises to purchase the accused products in the future. Furthermore, 'if magic words are required,' a Plaintiff certainly has standing when they, as is the case here, assert that they will purchase a product in the future if the ingredients are changed so that the product is not mislabeled." 2018 U.S. Dist. LEXIS 55818, at *11. Like the plaintiff in *Petrosino*, Plaintiff has alleged that he would purchase the Product in the future if it was actually "All Natural" as represented on the label. FAC ¶¶ 31, 49, 51.

Some courts adopt Defendants' argument and reason that since the plaintiff knows about the misrepresentations, he or she is in no danger of being deceived in the future and lacks standing. *See* Def. Mem. 17-18 (citing*, e.g.*, *Sitt*, 2016 U.S. Dist. LEXIS 131564, *21; *Holve v.*

*McCormick & Co.*, 334 F. Supp. 3d 535, 553, n. 10 (W.D.N.Y. 2018)). However, many courts conclude that the inability to rely on the labels in the future constitutes a threat of harm, or that a contrary holding would mean no one would ever have standing to pursue injunctive relief. *See Petrosino* at *11 ("The fact that 'Plaintiff would continue to purchase the Products in the future if the misleading labeling is corrected is sufficient to demonstrate an intent to purchase products in the future that subjects them to future harm.'"); *Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 445 (E.D.N.Y. 2015) ("Federal courts have held that plaintiffs have standing to seek injunctive relief based on the allegation that a product's labeling or marketing is misleading to a reasonable consumer, because to hold otherwise would effectively bar any consumer who avoids the offending product from seeking injunctive relief."); *Ackerman v. Coca-Cola Co.*, No. 09 CV 395, 2013 U.S. Dist. LEXIS 184232, at *56 (E.D.N.Y. July 17, 2013) ("[T]o hold otherwise would effectively bar any consumer who avoids the offending product from seeking injunctive relief.").

The only appellate court to squarely address this issue is the Ninth Circuit in *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018). Like the Second Circuit, there was a similar ("dramatic") split in the Ninth Circuit, which the court squarely addressed:

> We hold that a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an "actual and imminent, not conjectural or hypothetical" threat of future harm.

*Id.* at 969. The court reasoned that "[k]nowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future. In some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the

product's advertising or labeling in the future, and so will not purchase the product although she would like to." *Id.* at 969–70 (footnote omitted).

Indeed, in many cases holding that Plaintiff had no standing to pursue injunctive relief, it was the absence of an allegation such as that in paragraph 31 of the FAC that supported the finding that standing did not exist. *See, e.g., Hasemann v. Gerber Prods*. Co., 15-CV-2995 (MKB), 2016 U.S. Dist. LEXIS 134019, *34 (E.D.N.Y. Sept. 28, 2016) (plaintiffs lacked standing to pursue injunctive relief because they "have not alleged that they continue to purchase the Infant Formula or that they will purchase the Infant Formula in the future."); *Hidalgo v. Johnson & Johnson Consumer Cos*., 148 F. Supp. 3d 285, 296, (S.D.N.Y. 2015) (dismissing claim for injunctive relief because the "complaint contains no allegations that Hidalgo intends to purchase the Bedtime Products again."); *In re Avon Anti-Aging Skincare Creams & Prods. Mktg. & Sales Practices Litig*., 2015 U.S. Dist. LEXIS 133484, *22 (S.D.N.Y. Sept. 30, 2015) ("Plaintiffs are unlikely to buy the class products again, and do not allege otherwise in their complaint. Accordingly, they lack standing to seek a forward-looking injunction."). Plaintiff, in contrast, specifically alleges that he would buy the Products again in the future. FAC ¶¶ 31, 49, 51. Accordingly, even under the reasoning of some of the New York district courts which have held plaintiffs did not have standing to seek injunctive relief, Plaintiff has satisfied Article III. *See Goldemberg v. Johnson & Johnson Consumer Cos.,* 317 F.R.D. 374, 397 (S.D.N.Y. 2016) (holding that  the fact that "Plaintiff would continue to purchase the Products in the future if the misleading labeling is corrected is sufficient to demonstrate an intent to purchase products in the future that subjects them to future harm.").

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants'

motion to dismiss or stay in its entirety. If the Court grants any part of Defendants' motion,

Plaintiff respectfully requests leave to amend. FED. R. CIV. P. 15(a)(2); *Foman v. Davis*, 371 U.S.

178, 182 (1962).

Dated:  June 16, 2020

Respectfully submitted,


By:      */s/ Joseph Lipari*_____
      Joseph Lipari, Esq.
      Jeremy Francis, Esq.
      **THE SULTZER LAW GROUP**
      270 Madison Avenue, Suite 1800
      New York, NY 10016
      Tel: (917) 444-1960
      Fax: (888) 749-7747
      liparij@thesultzerlawgroup.com
      francisj@thesultzerlawgroup.com
