UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Christopher Silva, individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>— against —<br><br><br>Hornell Brewing Co., Inc., Arizona Beverages USA LLC, Beverage Marketing USA, Inc., and Arizona Beverage Co.<br><br>　　　　　Defendants. | 20-cv-756 (ARR) (PL)<br><br><br><br>**Not for print or electronic publication**<br><br><br>**Opinion & Order** |

ROSS, United States District Judge:

　　Silva brings this putative class action against Hornell Brewing Co., Inc., Arizona Beverages USA LLC, Beverage Marketing USA, Inc., and Arizona Beverage Co. The case concerns Arizona Fruit Snacks, a product manufactured and distributed by the defendants. Silva asserts various statutory and common law claims against defendants, alleging that the Arizona Fruit Snacks packaging falsely represents the product as "all natural," when in fact, the product contains synthetic ingredients and is not "all natural." Defendants move to either stay or dismiss the action. As set forth below, defendant's motion to stay is denied, and defendants' motion to dismiss is granted in part and denied in part.

## BACKGROUND

　　Defendants Hornell Brewing Co., Inc., Arizona Beverages USA LLC, Beverage Marketing USA, Inc., and Arizona Beverage Co. manufacture, sell, and distribute Arizona Fruit Snacks ("the Product"). First Am. Compl. ("FAC") ¶¶ 1–2, ECF No. 16. The Product packaging describes the Product as "All Natural." The front of the packaging is pictured below:



The Product contains gelatin, citric acid, ascorbic acid, dextrose, glucose syrup and modified food starch (corn). *Id.* ¶ 7. Plaintiff alleges that these ingredients are synthetic, which in plaintiff's view means the Product is not, in fact, all natural. *Id.* Thus, plaintiff alleges the "all natural" statement on the packaging is a misrepresentation. *Id.*

Plaintiff Christopher Silva is a resident of Brooklyn, New York. *Id.* ¶ 31. He purchased the Product, with the above-pictured "all natural" labeling, in or about October 2019. *Id.* Silva states

that if the Product were not labeled "All Natural," he would not have been willing to pay the same amount, and consequently, would not have purchased the Product at all. *Id.* ¶ 32. Silva states that defendants charged a premium price for the Product because it was represented as "All Natural" and that the Product cost more than competitive products not bearing an "All Natural" label. *Id.* ¶ 25–26. Silva also alleges that if the Product were actually "All Natural" (not containing synthetic ingredients), he would purchase the Product in the immediate future. *Id.* ¶ 31.

On October 5, 2019, Silva sent a letter and draft complaint to the defendant. On February 11, 2020, Silva filed this action, on behalf of himself, a proposed class consisting of all consumers who purchased the Product anywhere in the United States, and a proposed subclass consisting of all consumers who purchased the project in the State of New York. *Id.* ¶¶ 37–39; Complaint ¶¶ 37–39, ECF No. 1. Defendants moved to stay this action under the primary jurisdiction doctrine, or in the alternative, defendants move to dismiss for failure to state a claim upon which relief can be granted.

## DISCUSSION

### I. Motion to Stay

Defendant moves to "stay this action under the Primary Jurisdiction doctrine because the FDA is currently evaluating regulations to guide the use of the term 'Natural' on food products." Defs.' Mem. of Law in Supp. of Mot. to Stay or Dismiss ("Def.'s Br.") 1, ECF No. 20-8. Plaintiff opposes, arguing that a stay is not appropriate because there is no indication that such FDA guidance is forthcoming, and that the guidance would not actually affect plaintiffs' claims. Pl.'s Mem. of Law in Opp. to Defs.' Mot. to Stay or Dismiss ("Pl.'s Br.") 1, ECF No. 21. I agree with plaintiff and decline to stay this action.

"The primary jurisdiction doctrine is concerned with 'promoting proper relationships between

the courts and administrative agencies charged with particular regulatory duties.'" *Ellis v. Tribune Television Co.*, 443 F.3d 71, 81 (2d Cir. 2006) (quoting *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 63 (1956)). The question of primary jurisdiction arises in "cases involving technical and intricate questions of fact and policy that Congress has assigned to a specific agency." *Nat'l Commc'ns Ass'n, Inc. v. Am. Tel. & Tel. Co.*, 46 F.3d 220, 223 (2d Cir. 1995) (citing *Goya Foods, Inc. v. Tropicana Prod.*, Inc., 846 F.2d 848, 851 (2d Cir. 1988)). If the doctrine applies, the court will forbear ruling on an issue and instead refer it to the appropriate agency. *See id.* at 222–23.

Courts consider the following four factors in deciding whether to apply the primary jurisdiction doctrine:

> (1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise;
> (2) whether the question at issue is particularly within the agencys discretion;
> (3) whether there exists a substantial danger of inconsistent rulings; and
> (4) whether a prior application to the agency has been made.

*Ellis*, 443 F.3d at 82–83 (citing *Nat'l Commc'ns Ass'n, Inc.*, 46 F.3d at 222). "The court must also balance the advantages of applying the doctrine against the potential costs resulting from complications and delay in the administrative proceedings." *Nat'l Commc'ns Ass'n*, 46 F.3d at 223 (citing *Ricci v. Chicago Mercantile Exch.*, 409 U.S. 289, 321 (1973)). In this case, the four *Ellis* factors weigh against application of the primary jurisdiction doctrine.

First, while defining the term "all natural" does involve technical and policy considerations, this case does not require a technical definition of "all natural." Instead, this case requires a determination of whether labeling the Product as "all natural" is misleading to a reasonable consumer. That type of legal question is within the conventional experience of the court and does not require FDA guidance. *See, e.g.*, *Petrosino v. Stearn's Prods., Inc.*, No. 16-CV-7735 (NSR), 2018 WL 1614349, at *10at *30 (S.D.N.Y. Mar. 30, 2018); *Ault v. J.M. Smucker Co.*, No.

4

13 CIV. 3409 (PAC), 2014 WL 1998235, at *5 (S.D.N.Y. May 15, 2014); *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413 (RRM) (RLM), 2013 WL 4647512, at *8 (E.D.N.Y. Aug. 29, 2013); *Ackerman v. Coca–Cola Co.,* No. 09–CV–0395 (JG) (RML), 2010 WL 2925955, at *14 (E.D.N.Y. July 21, 2010).

As for the second factor, the parties agree that Congress gave the FDA authority over food labeling, 21 U.S.C. § 341, and that the proper use of the term "natural" on packaging is within the FDA's discretion. *See* Pl.'s Br. 3. But this is only one factor, and it is not decisive.

The third factor is primarily about the danger that the agency may issue guidance that conflicts with the court's ruling. *Elkind v. Revlon Consumer Prod Corp.*, No. 14–CV–2484(JS)(AKT), 2015 WL 2344134, *10 (E.D.N.Y. May 14, 2015); *see also Ellis*, 443 F.3d at 88. That risk is not present here because, as noted above, this case does not involve determining a scientific definition of "natural." Any guidance the FDA ultimately issues about the term "natural" will not be inconsistent with the outcome the court reaches in this case because the FDA is not tasked with applying a reasonable consumer standard.

As for the fourth factor, there has been a prior application to the agency, but I have no confidence that the FDA will be addressing this issue anytime soon. In November 2015, the agency opened a docket "to receive information and comments on the use of the term 'natural' in the labeling of human food products." *See* Wolfson Decl., Defs.' Ex. C, ECF No. 20-4, Use of the Term "Natural" in the Labeling of Human Food Products: Request for Information and Comments, 80 Fed. Reg. 69905-01 (Nov. 12, 2015). It has been nearly five years since that announcement, and the FDA has issued no guidance on use of the term "natural." FDA officials have made three public comments about the topic in those five years, none of which provide any concrete timeline for issuing guidance. *See* Wolfson Decl., Defs.' Ex. D, ECF No. 20-5, Heather Haddon, FDA

5

Commissioner Wants Closer Look at Health Statements on Packaging, Wall Street Journal (Oct. 10, 2017), https://www.wsj.com/articles/fda-commissioner-wants-closer-look-at-health-claimson- packaging-1507673335 (stating that the "agency is . . . looking at how to define 'healthy' and 'natural' more uniformly[,]" noting that "[t]he claims have been the subject of lawsuits[.]"); Wolfson Decl., Defs.' Ex. E, ECF No. 20-6, Ltr. FDA Commissioner Scott Gottlieb to Rep. David Valadao (December 19, 2018) (stating that the "FDA is actively working on this issue[]"); Wolfson Decl., Defs.' Ex. F, ECF No. 20-7, United States Food and Drug Administration, Remarks by Dr. Susan Magne at the Public Meeting on Horizontal Approaches to Food Standards of Identity Modernization (Sept. 27, 2019), available at https://www.fda.gov/news ("[W]e are close to proposing a new definition for the 'Healthy' claim on food labels and have been working diligently on the claim 'Natural.'").

Defendants make much of the recent comment by Dr. Magne that the FDA is "working diligently on the claim 'Natural.'" Def.'s Br. 7–8. Indeed, some courts appear to have decided to stay similar actions based on this statement. *See id.* (citing cases). But Dr. Magne's comment was now almost a year ago, and there continues to be no agency action. Given the experience of the past five years, there is no reason to think the agency is going to be addressing this issue in the near future.

As three of the four *Ellis* factors weigh against applying the primary jurisdiction doctrine, I decline to stay the case and proceed to consider the defendants' motion to dismiss.

## II. <u>Motion to Dismiss</u>

Under Federal Rule of Civil Procedure 12(b)(6), a party may move for dismissal for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). In deciding a Rule 12(b)(6) motion to dismiss, the court must "accept[] all factual allegations in the complaint

as true" and "draw[] all reasonable inferences in the plaintiff[s'] favor." *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013) (quoting *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009)). Nonetheless, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In particular, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Further, "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 476 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679). To determine whether a claim is plausible, the court must "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

    **A.**    **Violations of the New York General Business Law**

Under § 349 of the New York General Business Law ("NYGBL"), "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are . . . unlawful." NYGBL § 349(a). Under § 350, "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is . . . unlawful." *Id.* ¶ 350. To state a claim under § 349 or § 350, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker, Merrall & Condit Co.*, 967 N.E.2d 675, 675 (N.Y. 2012)). In this case, defendants argue that plaintiff has not stated a claim with respect to the first and third elements.

Defendants argue that the first element is not present because the complaint does not state "particularized factual allegations that Silva saw and relied upon alleged misstatements in a

7

particular advertisement[.]" Def.'s Br. 9. This argument is entirely without merit. The complaint includes an image of the packaging, and alleges that the phrase "all natural," which appears on the packaging, is a misstatement because the Product contains synthetic ingredients. FAC ¶ 6. The complaint further states that Silva purchased the Product in October 2019, and that he did so in reliance on the statement that the Product was "all natural," which in his view, means a lack of synthetic ingredients. *Id.* ¶¶ 31–32. Product packaging constitutes an consumer-oriented conduct for purposes of the GBL. *See Petrosino v. Stearn's Prod., Inc.*, No. 16-CV-7735 (NSR), 2018 WL 1614349, at *7 (S.D.N.Y. Mar. 30, 2018) ("Plaintiff properly pleaded that Defendant committed a deceptive act by labeling their products 'natural' despite having synthetic ingredients.") There is no defect as to the first element of the NY GBL claims.

    The complaint is also not defective as to the third element of a NYGBL claim. This element requires that the plaintiff allege an injury in the form of some type of pecuniary or actual harm caused by the misleading advertisement. *See Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56 (1999). Silva has alleged such an injury by stating that he paid more for the Product than he would have if not for the "all natural" representation. FAC ¶ 57; *see Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 480–81 (S.D.N.Y. 2014) (collecting cases stating that a price premium is a sufficient injury for a NYGBL claim). Defendants argue that plaintiff has failed to state a claim because he does not allege enough specific facts, such as the price Silva paid for the Product or the prices of competitive products. *See* Def.'s Br. 10–11. Such specific allegations are not required. *In re Frito-Lay N. Am., Inc.*, 2013 WL 4647512, at *24("[Defendant] also points to no case holding that plaintiffs must allege at what price they purchased the products, and the Court finds no reason to require such pleading[.]"). Defendants also argue that plaintiff has changed his theory of injury to the entire price he paid for the Product, *see* Def.'s Br. 10, but the

8

complaint clearly states that the injury is the price premium, *see* FAC ¶ 57.

### B. Violation of Other State Consumer Protection Statutes

In addition to the NYGBL claims, plaintiff asserts statutory claims under the consumer protection laws of forty states and the District of Columbia. *See* FAC ¶¶ 73–91. Plaintiff does not specify the elements of a claim under each statute, nor does he specify how the alleged facts satisfy the criteria of each statute. Def.'s Br. 11–12. But plaintiff is not required to do so. Plaintiff is required to plead the facts, not the details of the law. Here, Silva has made plausible claims that numerous state consumer protection laws have been violated.

As the court explained in *Allen v. ConAgra Foods, Inc.*, No. 13-CV-01279-JST, 2013 WL 4737421, at *11 (N.D. Cal. Sept. 3, 2013):

> Plaintiff is required to plead "enough *facts* to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (emphasis added). "A claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plaintiff has satisfied that standard here. If ConAgra believed that Plaintiff failed to state a claim under one or more state consumer protection statutes, they were free to make that argument in their motion; but the fact that Plaintiff asserts claims under fifty consumer protection statutes rather than just one is not a basis, in and of itself, for dismissal.

With the exception of two statutes discussed below, defendants have advanced no argument about why plaintiff's factual allegations are not sufficient to state a claim under the various state statutes. "[T]o the extent this very limited briefing invites the Court to *sua sponte* 'comb through all of Plaintiffs' consumer protection claims and determine whether the elements have been adequately pleaded, the Court respectfully declines the invitation.'" *Sergeants Benevolent Ass'n Health & Welfare Fund v. Actavis, PLC*, No. 15 CIV. 6549 (CM), 2018 WL 7197233, at *34–35 (S.D.N.Y. Dec. 26, 2018) (quoting *In re: Domestic Drywall Antitrust Litig. Civil Action*, No. 13-2437, 2016 WL 3769680, at *11 (E.D. Pa. July 13, 2016)). Given that plaintiff has properly pled a violation of New York's consumer protection law, it is certainly plausible that defendants' alleged conduct

9

violates the terms of the consumer protection laws of other states.

Defendants do make legal arguments as to two of the statutes listed in the complaint. In their moving brief, defendants state, "For one example, Silva alleges that Defendants violated Wisconsin's Consumer Protection Act ("WCPA"), Wis. Stat. § 402.313.[1] However, the WCPA is primarily intended to regulate consumer credit transactions, *see* Wis. Stat. § 423.301, and obviously has absolutely no application here." Def.'s Br. 12. Plaintiff does not address this argument in his responsive brief.

Wis. Stat. § 423.301, titled "False Misleading, or Deceptive Advertising" states:

> No merchant shall advertise, print, display, publish, distribute or broadcast or cause to be advertised, printed, displayed, published, distributed or broadcast, in any manner any statement or representation with regard to the extension of consumer credit including the rates, terms or conditions for the extension of such credit, which is false, misleading, or deceptive, or which omits to state material information with respect to the extension of credit that is necessary to make the statements therein not false, misleading or deceptive.

I agree with defendants that this section of the statute is not applicable to the facts alleged in the complaint, and I see no other provision of the WCPA that is relevant to this case. Thus, plaintiff's claims under the WCPA are dismissed.

In their reply, defendants argue that plaintiff has also failed to state a claim under the Ohio Deceptive Trade Practices Act ("ODTPA") because "a majority of Ohio courts have held [the Act] does not provide for a private right of action[.]" Def.'s Reply Mem. in Supp. of Mot. to Stay or Dismiss ("Def.'s Reply"), ECF No. 22. In *Borden v. Antonelli College*, , the court analyzes the statutory text of the ODTPA and relevant state court decisions to hold that the Act does not provide for a private right of action. 304 F. Supp. 3d 678, 685 (S.D. Ohio 2018). As noted by the *Borden* court, the ODTPA is analogous to Section 43(a) of the Lanham Act, which courts have consistently

---

[1] I assume defendant actually meant to cite the statute the plaintiff relies on in this cause of action, which is Wis. Stat. §421.101, not §402.313. See FAC ¶ 75(nn).

10

held does not confer standing to individual consumers. *Id.*; *see also In re Porsche Cars North America, Inc.*, 880 F. Supp. 2d 801, 873 (S.D. Ohio 2012). While movants normally are prohibited from raising new arguments in a reply brief, I agree with the defendants that the law makes clear that it is impossible for Silva to establish standing to bring a claim under the ODTPA. Thus, the ODTPA claim is dismissed.

Plaintiff's remaining thirty-eight state consumer protection law claims are not dismissed at this time.

### C. Breach of Express Warranty

To state a claim for breach of express warranty under New York law, a plaintiff must allege: "(1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach." *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014) (citing *Avola v. Louisiana-Pacific Corp.*, 991 F. Supp. 2d 381, 391 (E.D.N.Y. 2013)). "The buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." *In re Frito-Lay*, 2013 WL 4647512, at *27 (quoting N.Y. U.C.C. § 2-607(3)(a)).

Defendants challenge plaintiff's breach of express warranty claim solely on the grounds that plaintiff did not give the defendants reasonable notice of the alleged breach. *See* Def.'s Br. 13–14. The complaint states that Silva purchased the Product in October 2019, and mailed a draft complaint to defendants on October 25, 2020. FAC ¶¶ 31, 88. This constitutes a delay of, at most, approximately three weeks. Defendants contend that this brief delay constitutes an unreasonable delay as a matter of law. Def.'s Br. 13–14. Defendants also argue that Silva failed to allege when he discovered the defect, or whether October 2019 was the first time he purchased the Product. *Id.*

11

at 14. The cases defendants cite do not support dismissing a breach of express warranty claim for either of those reasons. Those cases involve complaints that did not allege when, if at all, the plaintiffs notified the defendants of the breach. *See In re Frito-Lay*, 2013 WL 4647512, at *27. ; *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013).

Silva has alleged sufficient facts to support his claim that he notified defendants of the breach, and the length of any delay is not unreasonable as a matter of law. Thus, I deny defendants' motion to dismiss plaintiff's third cause of action.

### D. Breach of the Magnuson-Moss Warranty Act

The plaintiffs purport to assert a claim under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301–2312 ("MMWA"). FAC ¶¶ 92–101. "The MMWA grants relief to a consumer 'who is damaged by the failure of a . . . warrantor . . . to comply with any obligation . . . under a written warranty." *Wilbur v. Toyota Motor Sales, U.S.A., Inc.*, 86 F.3d 23, 26 (2d Cir. 1996) (quoting 15 U.S.C. § 2310(d)(1) (1994)). The statute defines a "written warranty" as

> any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time[.]

§ 2301(6)(A). The MMWA does not apply to this case, as the plaintiffs have not alleged a written warranty as defined in the statute. *See In re Frito-Lay*, 2013 WL 4647512, at *17 (citing *Wilson v. Frito–Lay N. Am., Inc.*, No. 12–1586 SC, 2013 WL 1320468, at *15 (N.D. Cal. Apr. 1, 2013)) (concluding that representation that chips were "all natural" was not written warranty under MMWA because it did not warrant that product was free from defect or promise specified level of performance, but rather was description of product).

As plaintiff has failed to state a claim for breach of warranty under the MMWA, the fifth

12

cause of action is dismissed.

### E. Unjust Enrichment

"Under New York law, a plaintiff may prevail on a claim for unjust enrichment by demonstrating '(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution.'" *Nordwind v. Rowland*, 584 F.3d 420, 434 (2d Cir. 2009) (quoting *Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006)). The "unjust enrichment claim 'is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff.'" *Weisblum*, 88 F. Supp. 3d at 296 (quoting *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012)). The unjust enrichment cause of action "is not a catchall . . . to be used when others fail." *Corsello*, 967 N.E.2d at 1185. It "is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Id.* Typically, it is available when "the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled." *Id.* District courts in this circuit have dismissed unjust enrichment claims when they have relied on the same facts as the plaintiffs' other asserted causes of action. *See Price v. L'Oréal USA, Inc.*, No. 17 Civ. 0614(LGS), 2017 WL 4480887, at *5 (S.D.N.Y. Oct. 5, 2017) ("All of the claims in the Complaint are based on the same alleged misrepresentation by Defendants . . . . Accordingly, Plaintiffs' New York unjust enrichment claim is dismissed as duplicative."); *Bowring v. Sapporo U.S.A., Inc.*, 234 F. Supp. 3d 386, 392 (E.D.N.Y. 2017) ("Plaintiff's unjust enrichment claim relies on the same facts as her other causes of action in tort. Because this claim is duplicative, it is dismissed."); *Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 568 (S.D.N.Y. 2016) ("Buonasera is alleging tort causes of action and is relying on the same set of facts for these causes of action as he is for the unjust enrichment

13

claim. Because Buonasera fails to show how the unjust enrichment claim is not duplicative, it should be dismissed."). In particular, I recently dismissed an unjust enrichment claim when it duplicated other claims, including statutory claims under NYGBL §§ 349 and 350. *Sarr v. BEF Foods, Inc.*, No. 18-CV-6409 ARR RLM, 2020 WL 729883, at *10 (E.D.N.Y. Feb. 13, 2020).

In asserting the unjust enrichment cause of action here, the plaintiff alleges that the defendants' "unlawful conduct as described in this Complaint allowed Defendant[s] to knowingly realize substantial revenues from selling their Product at the expense of, and to the detriment or impoverishment of, Plaintiff and Class Members, and to Defendant's benefit and enrichment." FAC ¶ 105. This claim merely duplicates the plaintiffs' other claims, which arise out identical facts: the defendants' alleged misrepresentation on the Product packaging. Thus, the unjust enrichment claim is dismissed as duplicative.

### F. Standing for Injunctive Relief

Defendant argues that I should dismiss plaintiff's claims for injunctive relief for lack of standing. *See* Def.'s Br. 17–18. To establish Article III standing to seek injunctive relief, a plaintiff must "allege a risk of future injury." *Sitt v. Nature's Bounty, Inc.*, No. 15-CV-4199 (MKB), 2016 WL 5372794, at *7 (E.D.N.Y. Sept. 26, 2016). The complaint states that "[i]f the Product was actually 'All Natural', as represented on the Product's label, Plaintiff would purchase the Product in the immediate future." FAC ¶ 31. This allegation is not sufficient to demonstrate that Silva is likely to be injured by the defendants' conduct in the future.

A plaintiff does not necessarily have standing to seek injunctive relief, even when it is clear that he has standing to seek damages. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105–06 (1983); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016)."'[P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if

unaccompanied by any continuing, present adverse effects.'" *Lyons*, 461 U.S. at 95–96 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496–97 (1974)) (alteration in original). Because a plaintiff in a false advertisement case has necessarily become aware of the alleged misrepresentations, "there is no danger that they will again be deceived by them." *Elkind v. Revlon Consumer Prods. Corp.*, No. 14–CV–2484(JS)(AKT), 2015 WL 2344134, at *3 (E.D.N.Y. May 14, 2015); *accord, e.g., Tomasino v. Estee Lauder Cos, Inc..*, 44 F. Supp. 3d 251, 256 (E.D.N.Y. 2014). Although some district courts have allowed claims for injunctive relief to proceed in similar circumstances, *see, e.g., Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 445 (E.D.N.Y. 2015); *Ackerman v. Coca-Cola Co.*, No. 09-cv-395 (DLI) (RML), 2013 WL 7044866, at *15 n.23 (E.D.N.Y. July 18, 2013) (R. & R.), these cases are inconsistent with Article III and with Supreme Court and Second Circuit case law. *Nicosia*, 834 F.3d at 239; *Buonasera v. Honest Co.*, 208 F. Supp. 3d at 564–65 & n.3 ("[T]he Court declines to follow the reasoning in *Ackerman* as Second Circuit precedent dictates otherwise.").

To the extent that plaintiff was deceived by the appearance of the phrase "All Natural" on the Product label, the existence of this lawsuit shows that he is now aware that the Product contains synthetic ingredients. Thus, he will not be harmed again in the same way, and he lacks standing to seek an injunction.

## CONCLUSION

For the reasons set forth above, defendants' motion to stay is denied, and the motion to dismiss is granted in part and denied in part. The motion to dismiss is granted as to the fifth cause of action, violation of the Magnuson-Moss Warranty Act, the sixth cause of action, unjust enrichment, and the claims under the Wisconsin Consumer Protection Act and the Ohio Deceptive Trade Practices Act, which are part of the third cause of action. The motion is also granted as to

any claims for injunctive relief. The motion is denied as to the first and second causes of action, violations of the New York General Business Law, the third cause of action, violations of state consumer protection statutes, other than the two statutes identified above, and the fourth cause of action for breach of express warranty.

SO ORDERED.

                                                                                          _____/s/_____
                                                                                          Allyne R. Ross
                                                                                         United States District Judge

Dated:        August 10, 2020
                Brooklyn, New York